## IRIS OCTAVA TERRELL *v.* STATE OF MARYLAND

[No. 359, September Term, 1976.]

*Decided January 4, 1977.*

The cause was argued before MENCHINE, MASON and LISS, JJ.

*Harriette Cohen, Assistant Public Defender*, with whom was *Alan H. Murrell, Public Defender*, on the brief, for appellant.

*Deborah K. Handel, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County*, and *William B. Spellbring, Jr., Assistant State's Attorney for Prince George's County*, on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

Iris Octava Terrell, the appellant herein, was indicted with Earl Hargrove, Ernest Bright and James Williams as a participant in a conspiracy which resulted in the murder of her husband, Willie Clyde Terrell. The first three counts of the indictment charged only the three men with murder, carrying a handgun and the use of a handgun in a crime of violence. The fourth count charged the appellant and the other three defendants with conspiring to murder Willie

Clyde Terrell, and the fifth and sixth counts charged her with being an accessory before and after the fact to the murder of her husband who had died after receiving eleven gunshot wounds to various parts of his body. After some extended legal maneuvering the three men were called to trial. Bright and Williams withdrew the not guilty pleas previously filed by them and entered pleas of guilty to second degree murder; Hargrove withdrew his not guilty plea and entered a plea of guilty to first degree murder. The pleas were accepted; and after pre-sentence reports were obtained and evaluated by the trial court, sentences were imposed. After the imposition of the sentences the State entered *nolle prosequis* as to each of these defendants in the remaining counts of the indictment charging them with conspiracy to murder and the weapons charges.

The appellant was thereafter called to trial before a jury (Mathias, R. B., Judge, presiding) in the Circuit Court for Prince George's County. During the course of the trial Bright and Hargrove, appellant's alleged co-conspirators, testified as to conversations implicating her in a conspiracy to kill her husband. In addition, a witness, Morrisey, testified as to an alleged offer by the accused to pay him a certain sum of money if he would assist in killing her husband. The jury convicted the appellant of conspiracy to murder and of being an accessory before the fact. Sentence was imposed as to each conviction, and it is from these judgments that this appeal was filed.

The appellant offers four grounds upon which she rests her contention that the convictions against her should be reversed. The first contention is that the trial court erred in failing to rule on appellant's motion to dismiss the indictment against her until after the conclusion of the trial. The appellant filed her motion to dismiss five days prior to trial. A hearing on the motion was held after the selection of a jury, but before the jury was sworn. At the conclusion of the hearing the trial judge announced that he was reserving his ruling on the motion. Our reading of the record makes it clear that the court intended to deny the motion, and that the purpose of the reservation of the ruling was to prevent

an immediate appeal from the court's decision thereby aborting the trial. That this was the purpose of the legal shadowboxing is evidenced by the fact that counsel objected to the court's reservation of its ruling and moved the court for an immediate ruling on its objection. The trial judge responding, feint for feint, reserved ruling on that motion as well. The appellant renewed her motion to dismiss at the conclusion of the State's case and again at the conclusion of all the evidence. In denying the motions, the trial court indicated that it had earlier denied the same contentions stating, "The [c]ourt previously had ruled on that in the motion to dismiss, and the motion requiring the [c]ourt to rule on the motion to dismiss, two motions." It was not, however, until after the trial was concluded and sentence had been imposed that the trial judge caused the denial of the motions to be recorded in the docket entries. The appellant contends that this belated final ruling was tantamount to no ruling at all. We disagree.

This Court has recognized the dangers of piecemeal appellate review and has held that ruling on a motion to dismiss, in the exercise of the trial court's discretion, may be deferred for determination until the trial of the general issue, and that no appeal will lie except in those cases where the trial court denies an absolute constitutional right.

Maryland Rule 725 d expressly provides that a motion before trial raising defenses or objections shall be determined before trial unless the court orders that it be deferred for determination at the trial of the general issue. We have held that no appeal lies from the exercise of the trial court's judgment in deferring a ruling on pretrial motions until the trial on the merits. *Taylor v. State*, 22 Md. App. 370, 323 A. 2d 648 (1974); see also *Neal v. State*, 272 Md. 323, 322 A. 2d 887 (1974); *Pearlman v. State*, 226 Md. 67, 172 A. 2d 395 (1961); *Harris v. State*, 6 Md. App. 7, 249 A. 2d 723 (1969), *cert. denied*, 255 Md. 741 (1969); *Greathouse v. State*, 5 Md. App. 675, 249 A. 2d 207 (1969).

In *Gordon v. State*, 14 Md. App. 245, 286 A. 2d 833 (1972), we had before us a similar set of facts. In that case the trial court, according to the docket entries, entered its verdict of

guilty and then ruled on the defendant's motion to dismiss. We said at page 249:

> "[H]e points out, the motion was not determined at the trial of the general issue as the Rule provides, but after the trial on the general issue. This, he argues, was not in accordance with the Rule and he claims the proper sanction for the violation is a reversal of the judgment. We do not see it that way. Assuming that the docket entries record the proceedings in the order of their occurrence, there was no ruling on the motion until after the verdict and the 'trial' had ended. The lower court was wrong in not announcing its determination of the motion during the trial of the general issue. However, Rule 725 provides no sanction for its violation." (Footnote omitted).

We distinguish *Gordon, supra,* from *Brice v. State,* 254 Md. 655, 255 A. 2d 28 (1969), and *Saunders v. State,* 8 Md. App. 143, 258 A. 2d 776 (1969), where it was held that in the absence of waiver the *failure* to rule on a pretrial motion was error requiring reversal.

We find no prejudice from the late ruling in this case and therefore no merit to appellant's contention.

As her second assignment of error the appellant contends that the trial court should have granted appellant's motion to dismiss the conspiracy indictment against her because the entry of *nolle prosequis* on the conspiracy charges against all of her alleged co-conspirators mandated the dismissal of the conspiracy charge against her. It is, of course, true that the crime of conspiracy cannot be committed by one person alone. The gravamen of the crime is the unlawful agreement between two or more persons. This does not mean, however, that more than one conspirator must be convicted or prosecuted. *Hurwitz v. State,* 200 Md. 578, 92 A. 2d 575 (1952). It is only essential to show that at least two persons had a meeting of the minds — a unity of design and purpose — to accomplish a criminal or unlawful act, or to do a lawful

act by criminal or unlawful means. *Wilson v. State*, 8 Md. App. 653, 262 A. 2d 91 (1970).

In *Regle v. State*, 9 Md. App. 346, 264 A. 2d 119 (1970), we said at page 351:

> "[I]t is the well settled general rule that one defendant in a prosecution for conspiracy cannot be convicted where all of his alleged co-conspirators, be they one or more, have been acquitted or discharged under circumstances that amount to an acquittal. Hocheimer on Criminal Law (Second Edition) Section 290; Clark and Marshall, Section 9.07; Wharton's, Section 91; Perkins, p. 533. The validity of the general rule has been consistently recognized by the Court of Appeals. *See State v. Buchanan*, 5 H & J 317; *Bloomer v. State*, [48 Md. 251]; *Hurwitz v. State*, 200 Md. 578."

The issue then is whether, under the existing factual situation, all of the appellant's co-conspirators have been either acquitted or, in the alternative, discharged under circumstances which amount to an acquittal. The appellant urges that the acceptance of the guilty pleas to murder and the subsequent entry of *nolle prosequis* as to all of the remaining counts of the indictment charging the conspiracy as to all the co-conspirators, except the appellant, precluded her prosecution for the alleged conspiracy.

The Court of Appeals in *Blondes v. State*, 273 Md. 435, 443; 330 A. 2d 169, 173 (1975), in reversing this Court [1] stated the common law principle to be "that the entry of a *nolle prosequi, without the defendant's consent, and after jeopardy has attached,* operates as an acquittal and precludes further prosecution for the same offense." (Citations omitted; emphasis supplied). The Court continued "where a *nolle prosequi* is entered before jeopardy attaches, the State is only precluded from prosecuting the defendant further under that indictment, but the defendant may be

---

1. Blondes v. State, 19 Md. App. 714, 314 A. 2d 746 (1974).

proceeded against for the same offense by another indictment or information." (Citations omitted).

In *Regle v. State, supra,* at pages 352-353, we stated the law to be as follows:

"[W]hile the cases are generally divided on the question whether the entry of a *nolle prosequi* as to one of two alleged conspirators compels an acquittal of the remaining conspirator, the better reasoned view would appear to support the proposition that it does not, at least where the *nolle prosequi* was not entered without the co-conspirator's consent after the trial had begun (which then would have amounted to an acquittal and precluded reindictment)."

From the record before us we are unable to determine whether, in fact, jeopardy had attached to the co-conspirators at the time that the indictment was called at trial. It does disclose that all of the charges against all of the defendants were included in a single indictment of six counts. We have no information as to what occurred when the case was called as to the co-conspirators only, nor as to the circumstances surrounding the offer and acceptance of the guilty pleas and the subsequent entry of the *nolle prosequis.* We have only the bare docket entries which are not sufficient for a determination of this issue.

We held in *Van Meter v. State,* 30 Md. App. 406, 352 A. 2d 850 (1976), that Maryland Rule 1026 a 2 places the burden upon the appellant to provide a transcript of the testimony to be considered by the court. Where, as in *Van Meter,* testimony as to one of the appellant's contentions of error was not provided, the appellant was precluded from arguing that ground as a basis for reversal. As we shall reverse on other grounds we make no ruling on this contention.

The appellant next asserts that the trial court erred in unduly restricting her testimony on direct examination. It is well settled in Maryland that the testimony of one conspirator is admissible against a co-conspirator without the necessity of establishing through an independent source

the existence of the conspiracy. *Mason v. State*, 18 Md. App. 130, 305 A. 2d 492 (1973); *Irvin v. State*, 23 Md. App. 457, 328 A. 2d 329 (1974). The declarations of one conspirator are admissible against a co-conspirator when forming part of the conversation between them, and the acts of one are admissible against the other when done in the latter's presence and on the occasion of the alleged offense. 3 Underhill *Criminal Evidence* Sec. 861 (5th ed. 1957); *Mason, supra; Irvin, supra; Haina and Strawbridge v. State*, 30 Md. App. 295, 352 A. 2d 874 (1976). The legal foundation for these rules is found in the cases that hold that a conspirator is, in effect, the agent of each of the other co-conspirators during the life of the conspiracy. As such, any statement made or act done by him in furtherance of the general plan and during the life of the conspiracy is admissible against his associates and such declarations may be testified to by third parties as an exception to the hearsay rule. 1 Underhill *Criminal Evidence* Sec. 179 (5th ed. 1956); *Commonwealth v. Girardot*, 107 Pa. Super. 274, 163 A. 362 (1932). The appellant specifically complains of the trial court's refusal to permit her to testify concerning a number of conversations had with witnesses called to testify in the State's case. One of these witnesses was Nelson Morrisey. He testified that the appellant and Earl Hargrove, one of the alleged co-conspirators, came to his home and engaged in a conversation in the course of which she wanted to know "would I kill her husband or get someone to do it." Hargrove, also called by the State, testified he had several conversations with the accused about killing her husband and that he took her to see Morrisey. He denied any recollection of what transpired on their visit to Morrisey's home. The appellant, who testified in her own behalf, denied asking anyone to kill her husband. She admitted she accompanied Hargrove to Morrisey's home on one occasion, but stated she remained in the car and could not hear the conversation between Morrisey and Hargrove some twenty-five (25) feet away from her. She later left the car and heard Morrisey and Hargrove talking. She was asked what the conversation was between them and the State's

objection to the question was sustained. On another occasion she went to Morrisey's poolroom where Hargrove and Morrisey spoke out of her presence. She was asked what Hargrove told her about his conversation with Morrisey and the State's objection was sustained. The appellant was then questioned concerning her conversation with Hargrove as follows:

"Now, what did Earl Hargrove tell you he was going to see Morrisey for?

MR. SPELLBRING: Objection.

THE COURT: Sustain the objection.

BY MR. DE PAUL:

Q All right.

Mrs. Terrell, whose idea was it to go over to see Morrisey?

A Earl's.

Q And what did Earl say you were going over there for?

MR. SPELLBRING: Objection.

THE COURT: Sustain the objection.

BY MR. DE PAUL:

Q Mrs. Terrell, during that part of the summer, did you ever ask Earl Hargrove to kill your husband?

A No, I never.

Q Was there any talk about him killing your husband?

A No. Earl just said that —

MR. SPELLBRING: Objection to anything he said.

THE COURT: Court sustains the objection.

BY MR. DE PAUL:

Q Mrs. Hargrove [sic], did you discuss the killing of your husband with any of the people at your house the night before he was killed?

A No, I didn't. The only thing that was said in my house when they came in —

MR. SPELLBRING: Objection to anything that was said.

THE COURT: The Court will sustain the objection as to what anyone else said.

BY MR. DE PAUL:

Q Well, now, without telling us what it was that was said, who said something that you were about to tell me about?

A Earl said something. Earl said —

Q Who was present when Earl said something?

A I was present, Derrick was present, Renee was present, and James Williams.

Q You were present. You could hear Earl?

A Yes, I heard him.

Q What did he say?

MR. SPELLBRING: Objection.

THE COURT: Sustain the objection."

It is significant that the final conversation took place in the appellant's home the night before her husband was killed, and that Hargrove, Bright and Williams, her alleged co-conspirators, were present when the conversation took place. While there may be some justification under the hearsay rule to have excluded the appellant's testimony as to what Hargrove told her about his conversation with Morrisey, there is no justification for the refusal to permit her to testify concerning her conversation with her alleged co-conspirator in the presence of the remaining co-conspirators. We shall reverse.

Judge Gilbert[2] of this Court in *Irvin v. State, supra,* quoting 3 Underhill *Criminal Evidence* Sec. 861 (5th ed. 1957) stated:

---

2. Now Chief Judge of this Court.

". . . [B]efore the declarations of one conspirator are admissible against a co-conspirator the existence of the conspiracy and the connection of the coconspirator therewith must be established. This is true where the declarations of the conspirator are sought to be introduced through a third person; such third person cannot testify against the coconspirator until the latter's connection with the conspiracy is proved by evidence aliunde. But the proposition is not true when the witness is a conspirator who seeks to testify about declarations made to him by his coconspirator. In such case the witness may testify and the testimony will be received against the coconspirator. The analogy here is to the law of agency: the testimony of a third person as to what an alleged agent told him will not be received against the principal unless the agency is first established, but the agent himself may always testify to relevant statements made to him by the principal.

Further, the declarations of one conspirator are admissible against a coconspirator when forming part of a conversation between them, and the acts of one are admissible against the other when done in the latter's presence and on the occasion of the alleged offense." (Footnotes omitted).

The use of the analogy of the law of agency in conspiracy cases has been criticized by a number of the legal pundits, but has been primarily justified by its supporters on the ground that the original declarant is the principal who gave his agent instructions.[3] The agent then is permitted to testify as to statements made to him by the principal. In this case, however, the trial judge refused to permit the principal (the appellant) to testify concerning her conversations with

---

**3.** *See,* Levie, *Hearsay and Conspiracy: A Reexamination of the Co-Conspirator's Exception to the Hearsay Rule,* 52 Mich. L. Rev. 1159 (1954).

the agent (co-conspirator Hargrove). This seems to us manifestly unfair. While the co-conspirators' exception to the hearsay rule arose because of the great probative need for a relaxation in the law of evidence arising out of the difficulty of proving the crime of conspiracy, the use of such testimony must be kept within the limits of fairness to the defendant. To prevent the defendant from giving her version of the conversations she had with her alleged co-conspirators, particularly when they have already testified for the State as to their version, was clearly prejudicial to her right to a fair trial. The relaxation of the rules of evidence so avidly pursued by the State in these prosecutions for conspiracy cannot be permitted to become a one-way street.

We cannot accept the State's contention that the failure of the appellant to make a proffer as to the contents of the declaration as required by Maryland Rule 522 should preclude us from considering this ground. We are here concerned with an issue of fundamental fairness and our perusal of the record convinces us that the alleged conversations sought to be made a part of the appellant's testimony were relevant and material to the question of whether a conspiracy existed. We said in *Santoni v. State*, 5 Md. App. 609, 621, 249 A. 2d 200, 206 (1969), that "as the answer sought to be elicited from [the witness] by the appellant was so obvious and apparent from the question itself [and so very vital to appellant's defense], we do not think that a proffer of the substance of the expected answer was necessary, *Baldwin v. State*, 226 Md. 409, 414 . . .".

We find no merit in the final contention made by the appellant that the trial court erred in permitting testimony concerning the obtaining of arrest warrants for the appellant's co-conspirators or the refusal of the court to grant a mistrial because of such testimony. The testimony, we are convinced, did not influence the jury to convict the appellant because a co-defendant had been convicted in another proceeding. The granting of a mistrial is vested in the sound discretion of the trial court, and its decision will not be disturbed on appeal absent a showing of abuse of that

discretion. *Baker, Whitfield and Wilson v. State,* 15 Md. App. 73, 289 A. 2d 348 (1972).

> *Judgments reversed; new trial granted.*
>
> *Costs to be paid by Prince George's County.*