# HOWARD MARTIN ROSENBERG *v.* STATE OF MARYLAND

[No. 1388, September Term, 1982.]

*Decided May 10, 1983.*

The cause was argued before GILBERT, C. J., and LOWE and BLOOM, JJ.

*Fred R. Joseph,* with whom were *Richard S. Schrager* and *Smith, Joseph, Greenwald & Laake* on the brief, for appellant.

*Diane G. Goldsmith, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Stephen J. Braun, State's Attorney for Charles County, and Leonard C. Collins, Jr., Assistant State's Attorney* for Charles County, on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

## Preface

The remarkable thing about this appeal is the unorthodox manner in which the State sought to immunize one of two accused coconspirators, and the trial court's characterization of that procedure in which the coconspirator was acquitted as "not a trial on its merits." The other six issues raised in this Court by the appellant, Howard Martin Rosenberg, may properly be termed a foofarah.

## The Facts

The Grand Jury for Charles County, Maryland, indicted appellant and Debbie Ann Inman for (1) "keeping a bawdy house" (a common law offense), (2) "maintaining [a] building for the purpose of prostitution" (Md. Ann. Code art. 27, § 15 (a)), (3) conspiracy with Inman "and others" to maintain the bawdy house "for licentious sexual commerce" (common law conspiracy), (4) conspiracy with Inman "and others" to maintain a building for the purpose of prostitution" (common law conspiracy), (5) conspiracy with Inman "and others to steal a Trader's License" (common law conspiracy), (6) conspiracy with Inman, a corporate officer, "to misrepresent fraudulently to the public the affairs of the corporation" (common law conspiracy).

On February 8, 1982, almost three months prior to trial, there was a hearing on a motion to suppress evidence seized on a search and seizure warrant. The basis of the motion was the allegation that there was a lack of probable cause for the issuance of the warrant. The hearing judge denied the motion.

Two and one-half months later, the day before the scheduled trial in the Circuit Court for Charles County, Debbie Ann Inman was arraigned on a criminal information in the District Court for Charles County. She was charged with the exact same offenses she and Rosenberg faced in the

circuit court, except she was accused of "conspiring" to maintain a bawdy house, and "conspiring" to maintain a building for prostitution. No information is contained in the transcript of that proceeding as to the identity of the person or persons with whom Inman is alleged to have conspired.

In any event, the State requested that the district court judge dispose of the matter immediately. Inman, through counsel, waived her right to a jury trial. Without the entry of a plea of any sort, Inman was sworn and then questioned by the prosecutor. She related to the district court judge her involvement with Rosenberg in the operation of the corporation known as the "Body Boutique."

Ostensibly, Body Boutique was a place where, for a fee, persons could "sketch" nude females. Inman said that she and Rosenberg ran the business. He "told her to tell the girls [who were employed at the Boutique] to avoid solicitation. Acts of prostitution took place in the Body Boutique." Rosenberg "came down on Saturdays to collect the receipts."

According to one of the females who had been employed in the Body Boutique, she originally kept 50 percent of the earnings she collected for her sexual favors. She turned the other one-half in to the office. Later the split was changed so that the employees received but 40 percent and the "house" the balance.

The State then amended the charging documents by enlarging the time span embraced therein. The district court judge, after explaining to Inman her rights to a jury trial and accepting her waiver of that right, said: "The plea I take it is not guilty to each of the . . . ." Before he finished the sentence, Inman's counsel interrupted and stated: "This is correct Your Honor."

At that point the State called Joseph Stern, an employee of the Charles County Sheriff's Department. Mr. Stern was sworn, and he testified that he went to the premises occupied by the Body Boutique. Then the prosecutor's interrogation abruptly ceased. Defense counsel merely asked whether the premises were in Charles County. After an affirmative

response, the defense concluded its "questioning" of the witness. The State rested its "case." The defense promptly moved for judgment of acquittal. Having nothing before him but Stern's mere words, the judge entered a "verdict of not guilty as to each count."

The next day Rosenberg proceeded to trial in the circuit court.[1] Preliminarily, he moved to dismiss the conspiracy counts because of Inman's being found not guilty on those charges. His motion was denied. At the end of the case he renewed his motion. The trial judge observed that the only testimony about a conspiracy was that it was entered into with Inman and no one else. He granted the motion as to Counts 5 and 6, but denied it as to Counts 3 and 4, observing as we have said that the matter in the district court "was not a trial on its merits."

During the course of the trial in the circuit court, the State produced evidence that two men, with the knowledge of the county sheriff's office, participated in sexual intercourse and other sexual acts with women employed at the Body Boutique. Several officers of the sheriff's office related to the jury that police officers were offered "hand relief" in exchange for the sum of thirty dollars.

The jury convicted Rosenberg on all four remaining counts. He was sentenced to six months imprisonment on each count, but the sentences were to be served concurrently. Additionally, Rosenberg was fined $500 on each count, a total fine of $2,000.

We shall set forth under the respective issue raised such additional facts as may be necessary for a better understanding of the matter there discussed.

---

1. The indictment against Inman was nolle prossed. Why it was not dismissed in light of her having been found "not guilty" the day before is unexplained.

*The Issues*

Rosenberg presents a sextet of questions for our consideration, namely:

"1. Did the trial court err in denying appellant's motions for judgment of acquittal on Counts Three and Four of the indictment charging conspiracy?

2. Did the trial court err in denying appellant's request that the identity of two confidential informants referred to in the application for search and seizure warrant be disclosed?

3. Did the trial court err in denying appellant's motion to suppress physical evidence?

4. Did the trial court err in permitting the jury to consider the issue of appellant's guilt on Count One (keeping a bawdy house) and Count Two (maintaining a building for the purpose of prostitution) of the indictment?

5. Did the trial court err in denying appellant's motion to dismiss pursuant to Maryland Rule 711?

6. Did the trial court err in failing to require the State to more fully particularize the charges against the appellant as requested in his demand for a bill of particulars?"

I.

The crime of conspiracy may be defined as an agreement between two or more persons to accomplish or perform a criminal act or to accomplish or perform a lawful act in a criminal or unlawful manner. *Gardner v. State,* 286 Md. 520, 523, 408 A.2d 1317 (1979); *State v. Buchanan,* 5 H. & J. 259 (1821).

The Court of Appeals in *Hurwitz v. State,* 200 Md. 578, 92 A.2d 575, 581 (1952), declared flatly that "as one person alone cannot be guilty of conspiracy, when all but one conspirator are acquitted, conviction of the remaining conspirator cannot stand."

It has been held that a conviction of a conspirator will not be set aside because of the subsequent acquittal of his coconspirator, *Gardner, supra;* or because of the grant of immunity to a conspirator, *Hurwitz, supra;* or the death of the conspirator, *State v. Davenport,* 227 N.C. 475, 42 S.E.2d 686 (1947); or the identity of the coconspirator is unknown, *Adams v. State,* 202 Md. 455, 97 A.2d 281 (1953), *rev'd on other grounds, sub nom Adams v. Maryland,* 347 U.S. 179, 74 S.Ct. 442, 98 L.Ed. 608 (1954); or the case against the coconspirator has been left untried, *DeCamp v. United States,* 56 App. D.C. 119, 10 F.2d 984 (1926); or that the coconspirator has been unapprehended, *Rosenthal v. United States,* 45 F.2d 1000 (8th Cir. 1930); or that the coconspirator was unindicted, *United States v. Monroe,* 164 F.2d 471 (2d Cir. 1947).

In none of those cases, as Judge Cole observed in *Gardner v. State, supra,* 286 Md. at 525, was there a "judicial determination of the guilt or innocence of the alleged co-conspirators, *i.e.,* no adjudication on the merits...." Unlike *Gardner, Hurwitz, Davenport, Adams, DeCamp, Rosenthal,* and *Monroe,* there is, in the instant case, an acquittal at a judicial hearing. Inman, contrary to the circuit court judge's view, was tried on the merits of the criminal charges, including conspiracy, and she was found not guilty on each.

Why the State elected to proceed in the manner that it did in this case, eludes us, but whatever its reason, when it engineered Inman's acquittal prior to Rosenberg's trial on the conspiracy counts, it simultaneously, under the rule of consistency, acquitted Rosenberg of those charges. Patently, he could not conspire with himself. Since Inman was found not guilty of conspiring with Rosenberg, he had to be acquitted of conspiring with her. *Gardner v. State, supra; Bloomer v. State,* 48 Md. 521 (1878); *United States v. Bruno,* 333 F.Supp. 570 (E.D.Pa. 1971). In Maryland *a conviction of a conspirator will stand even though the coconspirator is subsequently acquitted, but the prior acquittal of a coconspirator*

*mandates the acquittal of a subsequently tried conspirator.*[2]

It follows from what we have said that Rosenberg's convictions on the two conspiracy counts must be reversed.

## II.

A review of the application for the warrant discloses that in addition to the two unidentified confidential informants, there is information from identified persons explaining precisely what sexual acts they engaged in, with whom they engaged in those acts, and the monetary consideration paid. The information supplied by readily identifiable persons furnished more than ample "probable cause" for the issuance of the warrant, even if we were to subtract any information furnished by the "unidentified" sources.

The hearing judge's refusal to require the State to reveal the identity of the confidential informants was not an abuse of discretion. There is absolutely nothing within the record to indicate any reason why the identities of the two confidential informants were needed by the defense. At best, the information supplied by them was cumulative.

## III.

Rosenberg asserts that the hearing court erred in denying his motion to suppress business documents and records seized from the Body Boutique because the State lacked probable cause to support the warrant authorizing seizure of those items. The crux of his argument is two-fold. First, he contends that much of the information in the affidavit in support of the search warrant was stale. Second, he argues that information provided by the confidential informants did not meet the two prong test of *Aguilar v. Texas,* 378 U.S.

---

2. There are cases, however, holding to the contrary. *See e.g.,* United States v. Musgrave, 483 F.2d 327 (5th Cir. 1973); People v. Superior Court, 44 Cal. App. 3d 494, 118 Cal. Rptr. 702 (Ct. App. 1975). The State would have us embrace *Musgrave* and *People v. Superior Court* and uphold Rosenberg's conviction for conspiracy. We expressly decline to do so.

108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Those cases require (1) the informant to be credible and reliable; and (2) that there be a sound basis for the informant's conclusion.

Appellant shovels smoke. We do not address the issue of staleness on its merits, inasmuch as the matter was not raised and decided in the hearing court. Md. Rule 1085. *Kohr v. State,* 40 Md. App. 92, 388 A.2d 1242 (1978); *Rose v. State,* 37 Md. App. 388, 393, 377 A.2d 588 (1977).

We shall not linger long on any discussion over *Aguilar* and *Spinelli.* Absent any showing of reliability or basis of knowledge on the part of the unidentified confidential informants, there was, as we have previously said in part II of this opinion, "more than ample 'probable' cause for the issuance of the warrant."

## IV.

Appellant maintains that the trial court erred in allowing the jury to consider whether he was guilty of the common law crime of maintaining a bawdy house and at the same time allowing it to consider whether he was guilty of the statutory crime of maintaining a house of prostitution in violation of Md. Ann. Code art. 27, § 15 (a). His rationale is that there was insufficient evidence to support the charges.

We see it differently.

The judge, quoting from Hochheimer's Criminal Law (2d ed. 1904) instructed the jury that a bawdy house is " 'a place for licentious sexual commerce (it being immaterial, whether the acts are committed with one woman or several women, whether indecency or disorderly conduct is visible from without or not,' in other words, you don't have to be able to stand outside and see what is going on inside, 'whether the place is kept peaceably and quietly or otherwise, whether it is kept for lucre ... or not).' If you keep it for licentious sexual commerce that is the definition as contained in Hochheimer's Criminal Law."

With respect to prostitution, the judge summarized the provisions of Md. Ann. Code art. 27, § 15 and § 16. Those sections provide, respectively:

(a) To keep, set up, maintain or operate any place, structure, building or conveyance for the purpose of prostitution, lewdness or assignation;

(b) To occupy any place, structure, building or conveyance for the purpose of prostitution, lewdness or assignation, or for any person to permit any place, structure, building or conveyance owned by him or under his control to be used for the purpose of prostitution, lewdness or assignation with knowledge or reasonable cause to know that the same is, or is to be, used for such purpose;

(c) To receive, or to offer or agree to receive any person into any place, structure, building or conveyance for the purpose of prostitution, lewdness or assignation, or to knowingly permit any person to remain there for such purpose;"

. . . .

"The term 'prostitution' shall be construed to mean the offering or receiving of the body for sexual intercourse for hire. The term 'lewdness' shall be construed to mean any unnatural sexual practice. The term 'assignation' shall be construed to include the making of any appointment, or engagement for prostitution or lewdness or any act in furtherance of such appointment or engagement."

The thrust of Rosenberg's argument is that he may not be convicted of both the bawdy house and prostitution offenses because they amount to one and the same thing.

The Court of Appeals in *Lutz v. State,* 167 Md. 12, 16, 172 A. 354 (1934), made clear that a bawdy house and a house of prostitution are not the same. The Court noted in *Lutz* that a bawdy house "need not be kept for lucre," while "lucre" is the purpose of a house of prostitution, at least from

the point of view of the proprietor and occupants of such an establishment.

As we see the evidence in this case, the jury could have found that females in the establishment were engaged in selling their bodies for vaginal sexual intercourse. Those acts constituted the statutory offense of maintaining a house of prostitution. There was also evidence from which the jury could have found that females were performing fellatio for money. Those acts violated Md. Ann. Code art. 27, § 15 because they constitute acts of lewdness as that term is defined in Md. Ann. Code art. 27, § 16 and in the section proscribing unnatural or perverted sexual practices, Md. Ann. Code art. 27, § 554.

Additionally, there was evidence that for the payment of money female persons in the establishment would remove all of their clothing and provide "hand relief" to the male recipient. The testimony entitled the jury, in reliance upon its common sense, to infer that in exchange for "lucre" the female attendants would masturbate the males, *i.e.,* manually stimulate the penis to such a degree that sexual satisfaction was achieved. That particular conduct, in our view, constitutes the "licentious sexual commerce" about which Hochheimer speaks, and that is addressed in Bishop, *Commentaries on the Criminal Law,* Vol. I, 6th ed. 1896, § 1083. Bishop says, "A bawdy house is any place, whether of habitation or temporary sojourn, kept open to the public either generally or under restrictions, for licentious commerce between the sexes." *See Lutz v. State, supra,* 167 Md. at 16.

## V.

Penultimately, Rosenberg asserts that the trial court erred in denying a motion to dismiss the indictment on the ground that it was defective. Rosenberg says that the State failed to specify the time frame in which the offenses are alleged to have occurred. He opines that the specification that the alleged offenses took place between May 2, 1981,

and May 18, 1981, lacks the particularity contemplated by Md. Rule 711.

Rosenberg's argument borders on absurdity. Maintaining a bawdy house encompasses regenerating criminal conduct. That conduct in some instances may not be detected because of the secluded environment in which it occurs. As Rosenberg well knows, it would have been impossible for the State to set forth the date upon which each and every illegal sexual act was culminated.

We think that the time in which the offenses occurred was described "as particularly as possible," and certainly put Rosenberg at no disadvantage.

## VI.

Ultimately, appellant claims that the trial court erred by not requiring the State, pursuant to his bill of particulars, to clarify "licentious sexual commerce" in Counts 2 and 3 of the indictment. The State did explain that "licentious sexual behavior means unlawful sexual acts indiscriminately made available to the general public." Rosenberg argues that the State did not supply him with a concise statement of facts and overt acts which constituted "maintaining a bawdy house."

We think the State's answer to the bill of particulars adequately apprised Rosenberg of the offenses charged. He was fully aware of what illicit acts the State intended to prove he permitted to occur in the business place of the Body Boutique. Rosenberg's attempt to throw every conceivable stumbling block into the path of the State is understandable. It is also unavailing.

*Judgment on counts 1 and 2, affirmed.*

*Judgment on counts 3 and 4, reversed.*

*Costs to be paid one-half by appellant and one-half by Charles County.*