572 A.2d 573

**Brent Marlowe HARRIS**

v.

**STATE of Maryland.**

No. 1212, Sept. Term, 1989.

Court of Special Appeals of Maryland.

May 1, 1990.

Nancy S. Forster, Asst. Public Defender (Alan H. Murrel, Public Defender on the brief), Baltimore, for appellant.

Cathleen C. Brockmeyer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. on the brief), Baltimore, for appellee.

Argued before MOYLAN, BLOOM and CATHELL, JJ.

MOYLAN, Judge.

This appeal provides the opportunity to take the thoroughly analyzed and well considered *dicta* of Chief Judge Murphy (now Chief Judge of the Court of Appeals) in *Regle v. State*, 9 Md.App. 346, 264 A.2d 119 (1970), and to elevate it (part of it, at any rate) to the status of a square holding. That *dicta* and this holding concern the effect of a *nolle*

*pros* of a conspiracy charge against one co-conspirator upon the trial of the only remaining co-conspirator.

In most general terms, the issue is: What action, if any, taken in some other place may so eradicate the criminal *mens rea* of a co-conspirator as to preclude a contrary finding as to that *mens rea* in the present case? The first level of inquiry will examine the preclusive effect, if any, of a *nolle pros,* simply as a *nolle pros,* of a conspiracy charge against a co-conspirator.

The next level of inquiry quickly becomes: But does it make any difference if the *nolle pros* was one "amounting to an acquittal"? Obviously, it makes a great deal of difference to the co-conspirator himself, but that is immaterial. The more pertinent question is, does it make any difference in terms of preclusive effect upon the present case? Much strong language from the case law, uttered (and perfectly correct) in the context of that defendant's future fortunes, must be significantly devalued when uncritically applied to the very different situation of the present appellant. The earlier cases generally gave full preclusive effect to *nolle prosses* (and other dispositions) that "amounted to acquittals." The later and better reasoned cases, however, persuasively point out that a more rational distinction may be found not there but at the next plateau of analysis.

The reliance of the earlier case law on the significance of an "acquittal" *per se* was the understandable product of linguistic overgeneralization, the failure to distinguish between acquittals on the merits and acquittals generally. More finely tuned examination has pointed out that the pertinent distinction should be between an acquittal on the merits, because it has probative force as to common issues of fact inherent in the charges, and a technical acquittal, because it generally has no such probative force. This is as far up the ladder of analysis as it is necessary to go to decide the present appeal.

At a yet higher rung of abstraction, however, *Gardner v. State*, 286 Md. 520, 408 A.2d 1317 (1979), strongly suggests, but holds only in part, that all of this painstaking inquiry may be conveniently jettisoned and that even an acquittal of the co-conspirator on the merits will have no preclusive effect on the present prosecution, if that acquittal occurred in some other trial rather than in a joint trial with the present defendant. We raise the *Gardner* implications as "a general alert," but reiterate that it is not necessary to resolve them in order to decide the present appeal.

As we begin, what is our larger perspective? The Maryland law is in a state of flux. Our affirmance of the conspiracy conviction in this case does, to be sure, relieve the State of much of the wooden reasoning and crack-of-doom pronouncements (very vexing when taken out of context) that have frequently plagued the State's efforts to show a co-conspirator's *mens rea*. This proper (but merely tactical) relief to the State, however, is modest and minimal compared to the strategically sweeping promise of total annihilation arguably portended by *Gardner v. State, supra*. It is the difference between a scalpel and a broadsword. An exploration of the full implications of *Gardner*, however, is a question and answer for another day.

The appellant, Brent Marlowe Harris, was convicted by a Kent County jury, presided over by Judge Elroy G. Boyer, of both the distribution of cocaine and conspiracy to distribute cocaine. Upon this appeal, he raises the following five contentions:

1. That because of the *nolle pros* of the co-conspirator, the evidence was not legally sufficient to sustain the appellant's conviction for conspiracy;

2. That he should not have been punished separately for the distribution and the conspiracy;

3. That Judge Boyer erroneously denied him the opportunity to show the prior inconsistent statement of a State's witness;

4. That Judge Boyer erroneously permitted the State to call a rebuttal witness; and

5. That Judge Boyer erroneously refused to strike a juror for cause.

The appellant does not dispute the fact that the evidence establishes that both he and Donnell Wilson were in the business of selling cocaine and that the two of them, in concert, sold a $50 baggie of cocaine to undercover State Trooper John Bollinger, on October 26, 1987. The thrust of the appellant's sufficiency argument, going only to the conspiracy conviction, is that Donnell Wilson, as part of a plea bargain, entered guilty pleas to two charges of distributing narcotics, in return for which the State *nolle prossed* the conspiracy charge. The appellant argues that this amounts to a judicial determination that Donnell Wilson did not possess a conspiratorial *mens rea* and could not, therefore, have been the indispensable second party for the "meeting of criminal minds."

The elements of conspiracy and the *mens rea* of conspiracy were so thoroughly and articulately analyzed in *Regle v. State, supra,* that little more is necessary than to restate that exposition of law here. Judge Murphy both defined conspiracy and described the critical characteristic that makes it a crime in its own right, in *Regle v. State, supra,* at 9 Md.App. 350, 264 A.2d 119:

"Conspiracy—a common law misdemeanor in Maryland—is defined as a combination by two or more persons to accomplish a criminal or unlawful act, or to do a lawful act by criminal or unlawful means.... The gist of the offense is the unlawful combination resulting from the agreement, rather than the mere agreement itself, and no overt act is required to constitute the crime.... In other words, as succinctly stated by the Supreme Court of New Jersey in *State v. Carbone* [10 N.J. 329] 91 A.2d 571, 574, [ (1952) ] the 'gist of the offense of conspiracy lies, not in doing the act, nor effecting the purpose for which the conspiracy is formed, nor in attempting to do them, nor in inciting others to do them, but in the forming of the scheme or agreement between the parties.' Concert in criminal purpose, it is said, is the salient factor in criminal

conspiracy.  Criminal conspiracy is a partnership in crime —'It is the coalition of manpower and human minds enhancing possibilities of achievement aimed at the objective that present a greater threat to society than does a lone offender.' " (Citations omitted).

Concert of action is required.  For there to be a meeting of the minds—to wit, a criminal combination—two minds must each possess the requisite criminal or conspiratorial *mens rea*.  Judge Murphy discussed the necessity of *mens rea* multiplied by two:

> "As one person cannot conspire or form a combination with himself, it is essential in proving the existence of a criminal conspiracy to show 'the consent of two or more minds,' ... it must be shown that at least two persons had a meeting of the minds—a unity of design and purpose—to have an agreement....As the crime of conspiracy is one requiring a specific intent, and necessarily involves at the least two guilty parties, the required criminal intent must exist in the minds of two or more parties to the conspiracy." (Citations omitted).

*Id.* 9 Md.App. at 351, 264 A.2d 119.

At issue is not the proving of the appellant's *mens rea* but the proving of the co-conspirator's *mens rea*.  In this regard, our concern is with the fact of the co-conspirator's *mens rea* and not with the legal fate of the case against him.  Whether the co-conspirator has or has not been prosecuted does not concern us.  Whether the co-conspirator can or cannot be prosecuted does not concern us.  We are concerned only with whether it has somehow been established that the co-conspirator did not or could not form the *mens rea* necessary for guilt of conspiracy.  As Judge Murphy explained, it would be "repugnant" for a defendant to be found guilty of a criminal meeting of the minds when the other necessary mind had already been found, in some other forum, not to have had a meeting with the present appellant's mind.  The repugnancy would be not in disparate verdicts but in disparate and inconsistent factual determinations.  When looking, therefore, to the circumstances

of what happened to or has been determined about the co-conspirator, the focus is upon the fact of his *mens rea*. It is not upon the legal disposition of the case against him, except insofar as that disposition necessarily implies something with respect to his *mens rea*. Judge Murphy explained, at 9 Md.App. 351–352, 264 A.2d 119:

> "In view of these principles, it is the well settled general rule that one defendant in a prosecution for conspiracy cannot be convicted where all of his alleged co-conspirators, be they one or more, have been acquitted or discharged under circumstances that amount to an acquittal.... The rationale underlying the rule appears clear: that it is illogical to acquit all but one of a purported partnership in crime; that acquittal of all persons with whom a defendant is alleged to have conspired is repugnant to the existence of the requisite corrupt agreement; and that regardless of the criminal animus of the one defendant, there must be someone with whom he confected his corrupt agreement, and where all his alleged co-conspirators are not guilty, a like finding as to him must be made.... But 'It is only where one is convicted and another or others are acquitted, resulting in a repugnancy upon the record, that the convicted conspirator may be discharged.'" (Citations omitted).

Our inquiry, therefore, is fact-focused, not disposition-focused. Although not qualifying for collateral estoppel treatment in many other regards, there is, at most from the appellant's point of view, an analogue between how we handle the issue of the co-conspirator's *mens rea* and collateral estoppel principles. Here, as there, the focus is upon whether there has been an acquittal *on the merits* as opposed to an acquittal for some more technical reason. If it has already been determined in some other litigation that the co-conspirator did not possess the criminal *mens rea*, it seems "repugnant" to attempt to relitigate that fact in the present case in an inconsistent fashion. If, on the other hand, the co-conspirator were dead or had never been found, had escaped prosecution by a statute of limitations

or a double jeopardy bar, had been granted immunity or received the benefit of a plea bargain, or had somehow avoided conviction upon a technicality, then the factual determination in the present case of the co-conspirator's ancillary *mens rea* would not in any way be inconsistent with or repugnant to what had happened in those other situations. It was of these nonforeclosing situations that Judge Murphy spoke, at 9 Md.App. 352:

> "Generally speaking, it would appear that so long as the disposition of the case against a co-conspirator does not remove the basis for the charge of conspiracy, a single defendant may be prosecuted and convicted of the offense, even though for one reason or another his co-conspirator is either not tried or not convicted.... Consistent with this rule, the authorities all agree that the death of one conspirator does not of itself prevent the conviction of the other, where the conspiracy between them is shown by the evidence. In *Hurwitz v. State* [200 Md. 578, 92 A.2d 575 (1952) ] ... a case in which all but one of the conspirators were granted immunity from prosecution on a ground not inconsistent with their participation in the conspiracy, the court held that such grant of immunity was not equivalent to acquittal and would not require reversal of the conviction of the one remaining conspirator. The same rule has been applied where one of two conspirators enjoyed diplomatic immunity and therefore could not be prosecuted for the conspiracy.... In *Adams v. State,* 202 Md. 455 [97 A.2d 281 (1953) ], it was held that conviction of one defendant in a conspiracy case was proper despite failure to convict any of the other conspirators where it was alleged and shown that there were persons unknown to the prosecution with whom the convicted defendant had conspired." (Citations omitted).

By parity of reasoning, the effect upon the present case of a *nolle pros* in a co-conspirator's case should depend, at most, not upon *whether* a *nolle pros* had been entered nor upon *when* it had been entered but only upon *why* it had been entered. A *nolle pros* "because the defendant was

too crazy to have had a criminal *mens rea*"[1] or "because the evidence is not sufficient to show that the defendant was part of the conspiracy" might logically have a foreclosing effect upon a contrary finding in the present case, whether jeopardy had attached when the *nolle pros* was entered or not. On the other hand, a *nolle pros* "because, notwithstanding the defendant's guilt, we have made a deal with him" should have no such foreclosing effect, again whether jeopardy had attached when the *nolle pros* was entered or not. When the *nolle pros* occurred (before or after the attachment of jeopardy) would have, of course, a critical effect upon the legal fortunes of the co-conspirator; it would not logically, however, have any effect upon the probative force of the *nolle pros* with respect to the purely factual issue of the co-conspirator's *mens rea*. The concern, at most, should be with the substance of what happened and not with legal form. It is not the legal action that matters but the reason behind the legal action.

Proceeding logically from his earlier discussion was Judge Murphy's well considered conclusion in *Regle*, albeit not the actual holding of the case, at 9 Md.App. 352–353, 264 A.2d 119:

> "[W]hile the cases are generally divided on the question whether the entry of a *nolle prosequi* as to one of two alleged conspirators compels an acquittal of the remaining conspirator, the better reasoned view would appear to support the proposition that it does not. . . ."

We adopt that "better reasoned view" and hold that the *nolle pros* of the conspiracy charge against Donnell Wilson, entered pursuant to a plea bargain, did not preclude the conspiracy conviction of the appellant. At that point in its theretofore bold discussion, however, *Regle v. State* equivocated; in our judgment, unnecessarily. It suggested

---

1. In this regard, however, *see Langworthy v. State*, 284 Md. 588, 598–599 and n. 12, 399 A.2d 578, 584 and n. 12 (1979), and *Anderson v. Dept. of Health & Mental Hygiene*, 310 Md. 217, 528 A.2d 904 (1987).

the possibility that its statement about the nonforeclosing effect of a *nolle pros* might be qualified, as it added:

> "... at least where the *nolle prosequi* was not entered without the co-conspirator's consent after the trial had begun (which then would have amounted to an acquittal and precluded reindictment)."

*Id.*

Even if that qualification be correct, it would not adversely affect the conviction now being reviewed. The *nolle pros* of the conspiracy charge against Donnell Wilson, although entered after jeopardy had attached, was not entered without Donnell Wilson's consent. Indeed, it was the very thing he had bargained for. We decline to rest our decision, however, on a mere technical circumstance that has, in our judgment, no bearing on the animating rationale behind this body of law. Apparent rules spring up as inadvertently and promiscuously as weeds. The best antidote against being choked to death by them is always to remember that a rule is only a means to an end, never an end in itself. While we are in the process, therefore, of elevating much of the *dicta* from *Regle v. State* into the holding of this case, we wish to make it clear that we are definitely not placing our seal of approval upon that qualifying language, a qualification which even *Regle*, in any event, only tentatively suggested as a possibility. It is a qualification that serves no rational purpose.

A word may be in order at this point about why that part of the *Regle* analysis dealing with the impact of a *nolle pros* is only *dicta* and not the holding of that case. Joseph James Regle had been jointly indicted with two other men, Richard Fields and Kent Chamblee, for conspiracy to rob. The State's case proceeded primarily by showing a conspiracy between Regle and Fields. The presence of Chamblee in the conspiracy was, at most, peripheral. Passing references to him in the evidence were little more than an afterthought. The reversal of the conspiracy conviction was based upon the failure of the State to overcome the strongly suggested possibility that Fields was too insane to

entertain a criminal intent. The peripheral character of Chamblee to the case was made clear, at 9 Md.App. 355, 264 A.2d 119:

"The evidence in the record before us plainly shows that appellant and Fields planned to commit a robbery at O'Donnell's restaurant. There is some evidence in the record to suggest that Chamblee may also have been a conspirator, although the State made little effort at the trial to establish his involvement in the conspiracy."

The reversal of Regle's conspiracy conviction rested exclusively on the failure of the State to show that Fields was mentally competent to entertain a criminal *mens rea*. That a genuine jury question had been raised in that regard was clear:

"Since an insane person is mentally incapable of forming a criminal intent, ... it is clear that if Fields was actually insane at the time of the offense, he could not be found guilty of engaging in a criminal conspiracy. It does not appear, however, that Fields was ever tried and acquitted of the conspiracy charge. But the only evidence in the record—the testimony of the police officer—is that Fields was found by State psychiatrists upon examination to have been insane at the time of the commission of the offense. While such testimony is hardly the equivalent of the expert medical evidence required to prove insanity, ... the trial judge, in his charge to the jury, stated as a fact that Fields 'was found to be insane.' Assuming this to be the true situation, it is unlikely that Fields will ever be brought to trial on the conspiracy charge." (Citations omitted).

9 Md.App. at 355–356, 264 A.2d 119.

The precise reason for the reversal was the erroneous jury instruction that the absence of a literal finding of "not guilty by reason of insanity" with respect to Fields was dispositive of Fields' sanity and that the jury, therefore, did not have to consider the sanity issue. There was no suggestion in the opinion that the State had shown a criminal meeting of the minds between Regle and Chamblee, so that

it might suffice as an alternative basis for affirming the conviction.

The *dicta* was by way of guidance to the lower court and counsel upon retrial. The guidance was provided primarily for the situation involving Fields:

> "If, upon retrial, the State intends to charge only Fields and appellant as conspirators, and the evidence properly shows that Fields was legally insane at the time the agreement to perpetrate the robbery was concluded, then even though Fields has not been acquitted of the offense of conspiracy by a judicial determination that he was insane, nevertheless the requisite *joint* criminal intent being absent, appellant cannot properly be convicted of engaging with Fields in a criminal conspiracy." (Emphasis in original).

9 Md.App. at 357, 264 A.2d 119.

The conditional guidance then offered with respect to Chamblee provided a "fall back position" for the State should its case with respect to Fields come up short:

> "If Fields is shown so to be insane, but the facts show that the conspiracy indictment against Chamblee was not *nol prossed* under circumstances amounting to an acquittal ..., then the State may undertake to adduce evidence showing that Chamblee was a conspirator, with appellant, in the plan to commit the robbery." (Citation omitted).

*Id.*

We are not unmindful of *Terrell v. State,* 34 Md.App. 418, 422–424, 367 A.2d 95 (1977), wherein we cited with apparent approval both the *Regle dicta* with respect to the nonforeclosing effect of a *nolle pros* and also the possible limitation thereon. The entire discussion in *Terrell,* however, was itself *dicta,* for we expressly declined to rule on the issue and decided the case on other and unrelated grounds.

■ Even in those cases where a *nolle pros* after the attachment of jeopardy amounted to an acquittal as far as the co-conspirator was concerned, the *Regle* discussion

462

pointed out that the case law contains two very different points of view with respect to the impact of an acquittal:

> "Some cases suggest that the rule that acquittal of all save one of the alleged conspirators results in the acquittal of all applies only to acquittals on the merits. *See Farnsworth v. Zerbst, supra* [98 F.2d 541 (1938) ] Other cases—while recognizing that acquittals are not always tantamount to a declaration of innocence—nevertheless conclude that an acquittal is in effect a judicial determination, binding on the State, that the acquitted defendant was not a participant in a criminal conspiracy. *See United States v. Fox,* 130 F.2d 56 (3rd Cir.); *State v. Smith* [117 Ark. 384] 175 S.W. 392 (Ark.)."

9 Md.App. at 353, 264 A.2d 119.

We believe the first line of cases, limiting the foreclosing impact of acquittals to acquittals on the merits, to be the far sounder of the two. That position, emphasizing consistency in fact finding rather than consistency in verdicts, is that taken by W. LaFave & A. Scott, *Criminal Law* § 6.5, at 561 (2d ed. 1986):

> "As to the entry of a *nolle prosequi* as to all except one of the defendants to a charge of conspiracy, some courts view the *nolle prosequi* as equivalent to an acquittal and thus consider it a bar to conviction of the remaining conspirator. The better view, however, based upon the fact that a *nolle* is merely a declaration by the prosecution that it will not presently pursue the charge further, is that entry of a *nolle prosequi* as to all except one conspiracy defendant will not vitiate his conviction. There is actually no inconsistency in result in such a case, and this is also true when the only other conspirator has been granted immunity in exchange for his testimony or is otherwise immune from prosecution on some basis which is unrelated to his alleged involvement in the conspiracy." (Footnotes omitted).

We hold that the *nolle pros* of the conspiracy charge against Donnell Wilson did not, under the circumstances of its being entered, have any adverse probative effect upon

the proof of the criminal meeting of the minds in this case. In holding this much, we are by no means suggesting the converse, that a contrary result would necessarily obtain even had the *nolle pros* amounted to an acquittal upon the merits. For the limited purposes of this opinion, we are simply giving the appellant, *arguendo,* the benefit of the most favorable version of the law he could reasonably hope for.

In fine-tuning the analysis as much as we have, we may actually have given the appellant far more protection than he deserves. There are powerful rumblings in *Gardner v. State,* 286 Md. 520, 523–529, 408 A.2d 1317 (1979), in response to which we might have casually dismissed the contention simply by pointing out that the *nolle pros,* whatever its legal impact, occurred in some other proceeding and not in the course of the appellant's trial. It was not necessary, however, to go that far in this case.

The sequence of the proceedings in *Gardner* was, to be sure, the opposite of that now before us, but the analysis of *Gardner* seems to have far-ranging impact beyond its precise sequencing. The appellant there, Roger Edward Gardner, was convicted of entering into two separate, though related, conspiracies with codefendant Ralph Lubow. Their trials were severed. Following Gardner's convictions, Lubow went to trial and was acquitted of both conspiracies. One acquittal, pursuant to his motion for judgment of acquittal, was apparently based upon the insufficiency of the evidence against him. The other acquittal was by a jury verdict of not guilty by reason of insanity.

The holding of *Gardner* was, of necessity, limited to the sequence actually before the Court in that case. The Court pointed out, at 286 Md. 528 n. 3, 408 A.2d 1317:

> "In light of the facts of this case, we do not decide if the defense of collateral estoppel or any other defense would be available to a conspirator whose sole co-conspirator was acquitted first."

It is interesting that even here, the reference is to "the defense of collateral estoppel," our "analogue" in the present discussion to fact-estoppel rather than issue-estoppel as the key to principled reasoning. There is certainly no intimation in that footnote that the *Gardner* result would have been different, had the sequencing been reversed.

Indeed, the dichotomy posed by *Gardner* was between consistency within joint trials, on the one hand, and consistency between different trials, on the other hand. The holding of *Gardner* that consistency was not required between separate trials did not limit itself to a particular verdict sequence:

"We hold therefore that the rule of consistency does not apply to separate trials but that each trial must be sufficient unto itself to support its verdict." (Footnote omitted).

286 Md. at 528, 408 A.2d 1317.

Judge Cole's discussion in *Gardner* began by pointing out that the so-called rule of consistency was something that had developed years before and within the exclusive context of joint trials and did not, therefore, have any necessary utility beyond that germinative context:

"This proposition is recognized in the law as the rule of consistency: that 'as one person alone cannot be guilty of conspiracy, when all but one conspirator are acquitted, conviction of the remaining conspirator cannot stand.' *Hurwitz v. State*, 200 Md. 578, 92 A.2d 575, 581 (1952). The rule developed many years ago when the practice was to try all persons charged with the crime of conspiracy together. Under such circumstances, common sense dictated that verdicts based on the same evidence and circumstances should be consistent. Accordingly the rule has developed primarily regarding joint trials."

286 Md. at 524, 408 A.2d 1317. He went on to point out that the rule of consistency, even in its broadest applications, does not extend to situations where there has been no judicial determination of guilt or innocence upon the merits of the case:

"The rule of consistency has been held not to apply when A has been convicted of conspiracy and B has been granted immunity, ... or when B is dead, ... unknown, ... untried, ... unapprehended, ... or unindicted....In these and other situations in which there has been no judicial determination of the guilt or innocence of the alleged co-conspirators, *i.e.,* no adjudication on the merits, there is nothing incongruous or inconsistent about convicting a sole defendant if there is sufficient evidence of the conspiracy." (Citations omitted).

286 Md. at 524–525, 408 A.2d 1317.

The issue before the Court in *Gardner* was whether "to apply the rule of consistency to separate trials." *Id.* at 525, 408 A.2d 1317. The opinion catalogued and discussed cases on both sides of the issue. Included in the catalogue of precedents favoring the application of the rule to separate trials was *dicta* from the Court of Appeals itself in the early case of *Bloomer v. State,* 48 Md. 521 (1878). *Gardner* then catalogued and chose to follow the opposite line of cases favoring the position that "the rule of consistency does not apply to separate trials of co-conspirators." 286 Md. at 526, 408 A.2d 1317. It quoted extensively from, and with approval, *People v. Holzer,* 25 Cal.App.3d 456, 102 Cal.Rptr. 11 (1972), and *Platt v. State,* 143 Neb. 131, 8 N.W.2d 849 (1943):

"It seems to us that reason and sound logic do not support the rule where one of two conspirators is convicted in a separate trial, that he shall be discharged because the second may be acquitted for a multitude of reasons having nothing to do with his guilt. The acquittal of the second conspirator could well result from the death or absence of an important state witness, the incompetency of a confession of the convicted conspirator in the second trial, the incompetency of a plea of guilty entered by the convicted conspirator at his trial, or for any other reason that would amount to a failure of proof."

286 Md. at 527–528, 408 A.2d 1317, *quoting* 8 N.W.2d at 855.

The express adoption of the *Platt v. State* position and the flat repudiation of *Bloomer v. State* could not have been more explicit:

> "We believe that *Platt* represents the better reasoned point of view, and we adopt it. To the extent that the language in *Bloomer* conveys a contrary view, it is expressly disapproved."

286 Md. at 528, 408 A.2d 1317. Although the holding of *Gardner,* confined as a matter of course to its factual context, was limited, its rationale appeared to range broadly across the field.

We only hesitate to apply to the verdict sequence before us *Gardner's* more austere constraints upon the rule of consistency because of the limiting interpretation placed upon *Gardner* by *Rosenberg v. State,* 54 Md.App. 673, 460 A.2d 617 (1983). There, we declined to apply *Gardner* to affirm a conspiracy conviction in a case where the co-conspirator had been acquitted prior to the trial in issue rather than afterward:

> "In Maryland a conviction of a conspirator will stand even though the coconspirator is subsequently acquitted, but the prior acquittal of a coconspirator mandates the acquittal of a subsequently tried conspirator." (Footnote omitted) (Emphasis omitted).

54 Md.App. at 679–680, 460 A.2d 617.

Any tension that may exist between *Rosenberg* and *Gardner* does not affect our decision in this case. Even the broader availability of the rule of consistency extended by *Rosenberg* is completely compatible with our holding here and with our supporting analysis. According to *Rosenberg,* the rule of consistency is only available where there has been an acquittal as a result of a judicial determination on the merits of guilt or innocence. The co-conspirator in *Rosenberg* had earlier been "tried on the merits of the criminal charges, including conspiracy, and she was found not guilty on each." *Id.* at 679, 460 A.2d 617.

With respect to the co-conspirator Donnell Wilson, there was no judicial determination that he was, on the merits of his case, not guilty of conspiracy. The finding in the present case, therefore, that Donnell Wilson had a conspiratorial *mens rea* that met with the appellant's own was not and could not be inconsistent with anything decided elsewhere, past, present or future.

Because our holding in this case is relatively narrow (all that is required for the present decision), this opinion is by no means a definitive treatment of the subject. For future guidance, however, it may be helpful for this analysis at least to set forth what it perceives to be the framework for more extensive future consideration. With increasingly finer tuning, the perception of what is the pivotal distinction seems to have moved (perhaps too far; perhaps not) along the following continuum:

1. A disposition of the co-conspirator's case not amounting to an acquittal versus a disposition amounting to an acquittal;

2. Where the latter has been deemed to be necessary, attention has then focused upon the narrower distinction between an acquittal for any reason at all versus an acquittal on the factual merits of guilt or innocence;

3. Where the latter has been deemed to be necessary, attention has then focused upon the yet narrower distinction between an acquittal on the merits in the very trial under review versus an acquittal on the merits in some other adjudication;

4. Where the latter has been deemed to be the pivotal distinction, attention has then focused upon the still narrower distinction between an acquittal on the merits in some other adjudication that preceded the trial in issue versus an acquittal on the merits in some other adjudication that followed the trial in issue.

The limited holding in this case is that if the choice is between distinction No. 1 and distinction No. 2 (all that we need to determine for the present decision), distinction No. 2 makes demonstrably better sense. The *nolle pros* of the

conspiracy charge against Donnell Wilson after jeopardy had attached did, to be sure, amount to an acquittal as far as Donnell Wilson himself was concerned. It was not, however, an acquittal upon the factual merits of guilt or innocence. A necessary element to be proved in the conspiracy charge against the present appellant, the *factum probandum* in issue, is that Donnell Wilson possessed a conspiratorial *mens rea.* In the language of evidence, a disposition upon the merits of the charge against Donnell Wilson might well possess logical relevance or probity in proving or disproving the existence of that *factum probandum.* A disposition not upon the merits, however, would have no logical relevance or probity at all. Our interest is not in what happened to Donnell Wilson *per se* but only with what it can tell us about the present case. Therefore, and at the very least, nothing short of a disposition upon the merits of the co-conspirator's case could fatally erode the evidentiary sufficiency of the present case.

Unresolved, however, is whether even that would be enough to be fatally erosive of the present case. Perhaps what *Gardner* is telling us is that for the disposition of a co-conspirator's *mens rea* to be admissible upon the factual issue of that same *mens rea* in the present case, that disposition must have not only evidentiary relevance but also evidentiary competence. In that event, the ultimately critical distinction would become distinction No. 3. What *Gardner* would be saying is that unless there is present the unity of parties so as to engage the gears of collateral estoppel law, the present case must rise or fall upon its own evidence and will not be influenced by what has happened elsewhere. Between an appellant's trial and a co-conspirator's separate trial, there clearly is no unity of parties so as to bring into play collateral estoppel. Short of that, there is no reason to consider what may have been decided elsewhere. All the apparent complexity and all the mystery may instantly evaporate once we conceptualize the problem as basically one of evidence, limited only, where appropriate, by collateral estoppel.

■ The appellant's remaining contentions will not detain us long. The appellant complains that he was given separate and consecutive sentences for the conspiracy and for the substantive offense which was the object of the conspiracy. Significantly, he does not argue, as he could not, that this was unconstitutional or even illegal. He simply argues that it was unfair, a ground for reversal with which we are not familiar. It is clearly and unequivocally established that a conspiracy and a substantive crime conspired at are not "the same offense" within the contemplation of double jeopardy law. No merger is required or even permitted. *Jones v. State*, 8 Md.App. 370, 380, 259 A.2d 807 (1969). The appellant cites no Maryland authority whatsoever and, indeed, does not even make a legal argument. Nothing more remains to be said.

Following the testimony of Trooper John Bollinger, who made the buy from the appellant, defense counsel indicated that it wanted to impeach the credibility of Bollinger by showing that at the preliminary hearing, Bollinger had given an inconsistent statement as to the clothes being worn by the appellant at the time of the buy. The defense wanted either to call the defense attorney, a practice frowned upon except for a compelling reason, or to obtain a transcript of the preliminary hearing, an action that would have delayed the jury trial in progress for between three and six weeks. Without remotely suggesting that Judge Boyer would have abused his discretion, had he denied both of these alternative requests, the short answer to the contention is that the denial the appellant complains of never occurred. When this matter was initially discussed, Judge Boyer directed counsel to "put that on the back burner for awhile and see how it develops." At no subsequent time, did the appellant renew his request to introduce the allegedly inconsistent prior statement. There is, therefore, nothing before us.

■ The appellant complains that Sergeant Brian Kirby should not have been permitted to testify as a rebuttal witness. In the course of the defense case, three witnesses

were called in an attempt to show that a misidentification had occurred. The collective impact of their testimony was that the appellant had never had a full beard but that his brother Ronald had and that Trooper Bollinger had somehow confused the two of them. Sergeant Kirby, who had known both the appellant and his brother for years, testified as to the lack of difficulty in telling them apart. Its relevance, its competence, and its significance aside, it clearly was rebutting the defense testimony about misidentification. We cannot say that Judge Boyer abused his discretion in treating it as rebuttal testimony rather than testimony that should have been offered in the State's case-in-chief.

■ The appellant's final contention is that Judge Boyer erroneously failed to strike a juror for cause. The juror was a former State Trooper. The juror assured the court that notwithstanding that earlier employment, he could render a fair and impartial judgment. The appellant alleges that the juror indicated he would believe a State Trooper upon the stand because he or she was a Trooper. A full review of the colloquy, however, indicates that the juror would believe a witness upon the stand because the witness was under oath. The juror stated that if a "felon [were] sworn under oath," he would believe that witness as well because of the oath to tell the truth. We see no error in refusing to strike this juror for cause.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.