788 A.2d 628

**STATE of Maryland**

v.

**Donnell JOHNSON.**

**No. 50 Sept.Term, 2001.**

Court of Appeals of Maryland.

Jan. 9, 2002.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of MD, on brief), Baltimore, for petitioner.

Mark Colvin, Asst. Public Defender (Stephen E. Harris, Public Defender, and Anne Gowen, Asst. Public Defender, on brief), Baltimore, for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BATTAGLIA, Judge.

We are tasked to determine whether the rule of consistency bars the respondent's conviction of conspiracy to commit murder when all of the named co-conspirators were acquitted of conspiracy in a prior and separate trial. Consistent with our decision in *Gardner v. State*, 286 Md. 520, 408 A.2d 1317 (1979), we hold that the rule of consistency is inapplicable to verdicts issued in separate trials. Thus, despite the acquittal of all of the respondent's named co-conspirators in a prior trial, the respondent's conviction for conspiracy is legally valid.

## I. Background

### A. Facts

On June 14, 1998, Keisha Robinson, a.k.a. Alicia Miller, was grabbed and assaulted near Ridgehill Avenue in Baltimore City by five men, including the respondent, Donnell Johnson. During the assault, Robinson heard one of the men exclaim, "Let's go around the corner and get her boyfriend." The men then left to pursue Robinson's boyfriend, Jerome Tyler, a.k.a. Herman Ridley. Robinson went home immediately after the assault but returned to the Ridgehill Avenue area approximately twenty minutes later in search of her boyfriend. Robinson found Tyler, who had a cut on his face, and saw another man, whom she only knew as "Timmy," lying in the alley. "Timmy," later identified as Gary Hawkins, was unconscious and unresponsive.

Witnesses told the police that Hawkins was surrounded by several men; one of the men struck Hawkins, causing him to

fall to the ground. The men then dragged Hawkins into an alley where the beating and kicking continued until Hawkins was unconscious. An ambulance transported Hawkins to the Shock Trauma Center at the University Hospital in Baltimore, but Hawkins did not survive his injuries.[1]

Robinson and other witnesses eventually identified the primary suspects to the murder of Gary Hawkins as Thomas Bolger, Andre Christian, Harold Duncan, Ronald Richardson, and the respondent.

## B. Legal Proceedings

Bolger, Christian, Duncan, Richardson, and the respondent, as well as other unnamed, unknown co-conspirators, ultimately were charged with the first degree murder of Gary Hawkins and conspiracy to commit first degree murder.[2] Prior to trial, the respondent's case was severed from that of the other named co-conspirators because of a conflict of interest on the part of the respondent's counsel. The co-conspirators were tried jointly prior to the respondent's trial; Bolger, Christian, and Richardson were convicted of second degree murder and

---

1. An autopsy report indicated that he died of blunt force head injuries which caused internal bleeding of the brain.

2. Bolger, Duncan, Johnson, and Richardson were indicted together. Christian was indicted separately. All five defendants were present together at the commencement of the proceedings on October 13, 1999 at which time the respondent's counsel moved to strike her appearance due to a personal conflict of interest.

   The respondent argues that where a separate trial is forced on the defendant due to circumstances beyond his control (i.e. his counsel's conflict of interest), fundamental fairness requires that the rule of consistency be applied as if the defendant had been jointly tried with his conspirators. Notwithstanding the absolute lack of authority for this proposition, and notwithstanding that the court's objective was to secure fundamental fairness for respondent by ensuring that he was not represented by an attorney who acknowledged a personal conflict of interest, the question of whether the rule of consistency applies should never be dependent upon the defendant's subjective desires concerning the determination to separate the trials. To require courts to enforce different standards with respect to inconsistent verdicts depending on whether the severance was voluntary or involuntary, wanted or unwanted, is unworkable.

second degree assault, while Duncan was convicted only of second degree murder. All were acquitted of conspiracy to commit murder.

Subsequently, the respondent was tried before the Circuit Court for Baltimore City and on May 8, 2000, was convicted of second degree assault and conspiracy to commit murder. Prior to sentencing, the respondent filed a Motion for New Trial/Motion for Judgment of Acquittal Notwithstanding the Verdict arguing that pursuant to the rule of consistency, the prior acquittal of a co-conspirator mandates the acquittal of a subsequently tried conspirator. The circuit court denied the motions on dual grounds. First, the court ruled that the rule of consistency did not apply because the respondent's indictment, while specifically naming the four other separately tried co-conspirators, included unknown and unnamed co-conspirators. Second, the circuit court ruled that evidence at trial supported the theory that persons other than the separately tried co-conspirators may have conspired with the respondent to commit murder.

The respondent appealed to the Court of Special Appeals claiming, again, that a conspiracy conviction cannot stand when all other co-conspirators were acquitted previously in a separate trial.[3] In an unreported opinion, the Court of Special Appeals reversed the judgment of the circuit court with respect to the conspiracy conviction. Relying on its holding in *Rosenberg v. State*, 54 Md.App. 673, 460 A.2d 617 (1983), the intermediate appellate court held that "a conviction of a conspirator will stand even though the co-conspirator is subsequently acquitted, but the prior acquittal of a co-conspirator mandates the acquittal of a subsequently tried conspirator." *Id.* at 679–80, 460 A.2d at 620 (emphasis of original omitted). The Court of Special Appeals further held that

---

3. The respondent also argued a second evidentiary issue, claiming that the circuit court erroneously admitted hearsay testimony during the trial. The Court of Special Appeals agreed that testimony was hearsay, and thus improperly admitted, but held that the error was harmless. This evidentiary issue was not raised in the petition for writ of certiorari before this Court.

there was insufficient evidence to support the conviction of conspiracy based on the theory that unknown, unnamed persons may have conspired with the respondent.[4]

The State petitioned this Court for a writ of certiorari, which we granted, to consider whether the Court of Special Appeals erred in holding that under the rule of consistency, the prior acquittal in a separate trial of all named co-conspirators barred the respondent's conviction of conspiracy to commit murder. *See* 365 Md. 65, 775 A.2d 1216 (2001). We hold that the rule of consistency is inapplicable to verdicts issued in separate trials. Thus, despite the acquittal of all of the respondent's co-conspirators in a prior trial, the respondent's conviction for conspiracy is legally valid.

## II. Standard of Review

We are asked to review the legality of a conviction, i.e., whether the respondent's conviction of conspiracy to commit

---

**4.** Because the Court of Special Appeals found that the rule of consistency rendered the respondent's conspiracy conviction legally invalid (pursuant to the prior acquittal of the *named* co-conspirators), the court was required to consider whether the conviction may still be valid based upon the unknown, unnamed co-conspirator language in the indictment. According to the Court of Special Appeals, the respondent's conspiracy conviction could not be based solely upon the unknown unnamed co-conspirator language in the indictment because the evidence procured at trial would not support such a conviction. The State's primary witnesses never testified that persons other than the named co-conspirators participated in the crime. Robinson identified all five men, and Sultan Pasha, the State's other primary witness, was able only to identify four of the five men.

We do not agree, however, with the initial holding by the Court of Special Appeals, i.e. that the rule of consistency applies to separate trials of co-conspirators. *Because the rule of consistency is inapplicable to separate trials,* the respondent's conviction for conspiracy (with the *named* co-conspirators) is legally valid. As such, we do not need to consider, as the Court of Special Appeals did, whether the respondent's conviction could be based solely upon the unknown, unnamed co-conspirator theory. Nevertheless, the Court of Special Appeals's conclusion regarding unknown, unnamed co-conspirators fails to consider the differences in the quantum of proof that may exist at a subsequent trial of a presently unknown co-conspirator. As we discuss, *infra,* for reasons completely unrelated to the guilt or innocence of the defendant, the evidence admitted before a jury against one co-conspirator may differ from the evidence admitted against another.

murder is legally valid upon the prior acquittal of his co-conspirators. As with all questions of law, we review this matter *de novo*. *See Williams v. State*, 364 Md. 160, 169, 771 A.2d 1082, 1087 (2001); *Cartnail v. State*, 359 Md. 272, 282, 753 A.2d 519, 525 (2000)(stating that "[i]ssues of law and mixed questions of law and fact are reviewed *de novo*"); *Ferris v. State*, 355 Md. 356, 368, 735 A.2d 491, 497 (1999).

### III. Discussion

This Court consistently has defined conspiracy as the agreement between two or more people to achieve some unlawful purpose or to employ unlawful means in achieving a lawful purpose. *See McMillian v. State*, 325 Md. 272, 290–91, 600 A.2d 430, 439 (1992)(quoting *Monoker v. State*, 321 Md. 214, 221, 582 A.2d 525, 528 (1990)); *Apostoledes v. State*, 323 Md. 456, 461–62, 593 A.2d 1117, 1120 (1991)(quoting *Townes v. State*, 314 Md. 71, 75, 548 A.2d 832, 834 (1988)); *Mason v. State*, 302 Md. 434, 444, 488 A.2d 955, 960 (1985). We have further explained that,

> The essence of a criminal conspiracy is an unlawful agreement. The agreement need not be formal or spoken, provided there is a meeting of the minds reflecting a unity of purpose and design. In Maryland, the crime is complete when the unlawful agreement is reached, and no overt act in furtherance of the agreement need be shown.

*Townes*, 314 Md. at 75, 548 A.2d at 834. At the core of the crime of conspiracy is the agreement; thus, conspiracy requires two or more participants. *See Mason*, 302 Md. at 444, 488 A.2d at 960 (stating that "[t]he agreement is the crime, and the crime is complete without any overt act"); *Gardner v. State*, 286 Md. at 524, 408 A.2d at 1319 (noting that "conspiracy necessarily requires the participation of at least two people"). The legal tenet known as the "rule of consistency" embodies the postulate that where the participation of only one person is established, the crime of conspiracy cannot exist and a conviction thereunder is void. *See Gardner*, 286 Md. at 524, 408 A.2d at 1319. It is pursuant to this doctrine that the respondent argues, and the Court of Special Appeals held,

that a conspiracy conviction cannot stand when separately tried co-conspirators were acquitted at a prior trial. The resolution of this issue requires our Court to define the *scope* of the rule of consistency and its proper application.

While this *specific* issue—whether a *prior* acquittal of co-conspirators bars the conviction of a subsequently tried conspirator—has not been considered by this Court, a similar dispute arose more than twenty years ago in *Gardner v. State, supra.* The *Gardner* Court considered whether one conspirator's conviction may stand where the sole co-conspirator is acquitted at a *subsequent* trial. *Id.* at 521, 408 A.2d at 1318. In holding that the rule of consistency does not apply to separate trials of co-conspirators, *see id.* at 528, 408 A.2d at 1322, we explained that:

> The rule developed many years ago when the practice was to try all persons charged with the crime of conspiracy together. Under such circumstances, common sense dictated that verdicts based on the same evidence and circumstances should be consistent. *Accordingly the rule has developed primarily regarding joint trials.*

*Id.* at 524, 408 A.2d at 1319–20 (emphasis added). Contrary to inconsistent verdicts in joint trials, inconsistent verdicts in separate trials may result from a variety of differences between the trials in question: the strength of the evidence presented to the jurors, the manner in which the evidence is presented, the availability of witnesses, the quality of the evidence, the ability to establish plausible defenses, and the composition of the jury, to name a few.

Other courts, as we noted in *Gardner, see* 286 Md. at 526–28, 408 A.2d at 1321, similarly have held the rule of consistency to be inapplicable to separate trials of co-conspirators. The Supreme Court of Pennsylvania, for example, stated that the rule of consistency loses much of its force in the case of separate trials because "different verdicts may well ... [be] due solely to the different composition of the two juries, ... [or] a variety of other circumstances, including a difference in the proof offered at trial." *Commonwealth v. Byrd,* 490 Pa.

544, 417 A.2d 173, 177 (1980); *see Commonwealth v. Phillips,* 411 Pa.Super. 329, 601 A.2d 816, 820 (1992) *aff'd* 534 Pa. 423, 633 A.2d 604 (1993)(per curiam)(holding that "the prior acquittal of a sole co-conspirator in a separate trial does not preclude finding the subsequently tried co-conspirator guilty of conspiracy"). California courts also have recognized that the rule of consistency is a logical imperative only where all conspirators are tried together.[5] *See e.g. People v. Nunez,* 183 Cal.App.3d 214, 228 Cal.Rptr. 64, 65 (1986); *People v. Holzer* 25 Cal.App.3d 456, 102 Cal.Rptr. 11, 12 (1972).

In fact, this postulate is well-accepted in most state jurisdictions, *see e.g. Yedrysek v. State,* 293 Ark. 541, 739 S.W.2d 672, 673 (1987); *People v. Palmer,* 24 Cal.4th 856, 103 Cal.Rptr.2d 13, 15 P.3d 234, 239 (2001); *Marquiz v. People,* 726 P.2d 1105, 1108 (Colo.1986); *State v. Powell,* 674 So.2d 731, 733 (Fla. 1996); *Smith v. State,* 250 Ga. 264, 297 S.E.2d 273, 274 (1982); *Commonwealth v. Cerveny,* 387 Mass. 280, 439 N.E.2d 754, 757 (1982); *People v. Anderson,* 418 Mich. 31, 340 N.W.2d 634, 636 (1983); *Platt v. State,* 143 Neb. 131, 8 N.W.2d 849, 856 (1943); *State v. Hawkins,* 178 N.J.Super. 321, 428 A.2d 1322, 1323–24 (App.Div.1981)(applying the rule of consistency only to verdicts rendered at *joint* trials); *State v. Valladares,* 99 Wash.2d 663, 664 P.2d 508, 513 (1983); and in most federal jurisdictions, *see e.g. United States v. Bucuvalas,* 909 F.2d 593, 597 (1st Cir.1990); *United States v. Thomas,* 900 F.2d 37, 40 (4th Cir.1990); *United States v. Espinosa–Cerpa,* 630 F.2d 328, 332–33 (5th Cir.1980); *United States v. Sachs,* 801 F.2d 839, 845 (6th Cir.1986); *Cortis v. Kenney,* 995 F.2d 838, 840 (8th Cir.1993); *United States v. Valles–Valencia,* 811 F.2d 1232, 1238–39 (9th Cir.1987); *United States v. Andrews,* 850

---

**5.** We note that, contrary to the law in our State, both the Pennsylvania Supreme Court and the California Supreme Court recently went a step further and stated that consistency in verdicts resulting from joint trials was no longer required, so long as the verdicts were supported by the evidence. *See People v. Palmer,* 24 Cal.4th 856, 103 Cal.Rptr.2d 13, 15 P.3d 234, 235 (2001); *Commonwealth v. Campbell,* 539 Pa. 212, 651 A.2d 1096, 1099 (1994). Thus, if five co-conspirators are tried together, it is a possible and legally valid outcome in these jurisdictions to have only one of the co-conspirators convicted of conspiracy.

F.2d 1557, 1561 (11th Cir.) (en banc) *cert. denied,* 488 U.S. 1032, 109 S.Ct. 842, 102 L.Ed.2d 974 (1989); *United States v. Dakins,* 872 F.2d 1061 1065–66 (D.C.Cir.1989), *cert. denied,* 493 U.S. 966, 110 S.Ct. 410, 107 L.Ed.2d 375 (1989).

Several of these jurisdictions, to some degree, have based their respective decisions to forego applying the rule of consistency on two Supreme Court decisions, *Standefer v. United States,* 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980) and *United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), which have undermined the rule of consistency. Significantly, in both cases, the Supreme Court relied on the fact that inconsistent jury verdicts are often a product of jury lenity to support its determination to uphold facially inconsistent verdicts. *See Standefer,* 447 U.S. at 22, 100 S.Ct. at 2007, 64 L.Ed.2d at 699; *Powell,* 469 U.S. at 65, 105 S.Ct. at 477, 83 L.Ed.2d at 469. The *Standefer* Court acknowledged that juries in criminal cases often "acquit out of compassion or compromise or because of their assumption of a power which they had no right to exercise, but to which they were disposed through lenity." *Standefer,* 447 U.S. at 22, 100 S.Ct. at 2007, 64 L.Ed.2d at 699 (internal quotations and citations omitted).[6]

---

**6.** In *Standefer,* the Supreme Court considered whether an alleged principal's acquittal barred the conviction of the accessory at a subsequent trial. *See Standefer,* 447 U.S. at 11, 100 S.Ct. at 2002, 64 L.Ed.2d at 692–93. The crime for which the principal and accessory were charged was accepting unlawful compensation in violation of 26 U.S.C.A. § 7214(a)(2) (West 1989) and 18 U.S.C.A. § 2 (West 2000). Refusing to apply the doctrine of non-mutual collateral estoppel to a jury verdict in a criminal case, the Court held that the prior acquittal was irrelevant to the prosecution of the accessory; thus, a person could be convicted as an accessory even though the principal was acquitted in a prior proceeding. *See Standefer,* 447 U.S. at 21–26, 100 S.Ct. at 2006–09, 64 L.Ed.2d at 698–701.

This Court's stance on the prosecution of accessories and principals historically had differed from federal law. While we did, in *Lewis v. State,* 285 Md. 705, 404 A.2d 1073 (1979), abolish our common law rule that a final conviction of the principal is necessary before the accessory can be tried, *see* 285 Md. at 716, 404 A.2d at 1079 (stating that "the trials of accessories before or after the fact will not be precluded because the principals have not been sentenced or even have not been tried"), we had not completely abrogated the related common law rule, that an accessory cannot be convicted of a higher crime than the

Similarly, the *Powell* Court stated, "[t]he fact that the inconsistency may be the result of lenity, coupled with the Government's inability to invoke review, suggests that inconsistent verdicts should not be reviewable." *Powell*, 469 U.S. at 66, 105 S.Ct. at 477, 83 L.Ed.2d at 469.[7]

While not ruling on the specific issue before us, the Supreme Court affirmatively recognized that different trials commonly lead to different results. We necessarily consent to these consequences by our common acceptance of the jury system. *See Hamling v. United States*, 418 U.S. 87, 101, 94 S.Ct. 2887, 2899, 41 L.Ed.2d 590, 611 (1974)(citing *United States v. Dotterweich*, 320 U.S. 277, 279, 64 S.Ct. 134, 135, 88 L.Ed. 48, 51 (1943)); *Roth v. United States*, 354 U.S. 476, 492, n. 30, 77 S.Ct. 1304, 1313 n. 30, 1 L.Ed.2d 1498, 1511 n. 30 (1957)(stating "that different juries may reach different results . . . is one of the consequences we accept"); *Ferrell v. State*, 318 Md. 235, 254, 567 A.2d 937, 946–47, *cert. denied*, 497 U.S. 1038, 110 S.Ct. 3301, 111 L.Ed.2d 810 (1990)(quoting *United States v. Mespoulede*, 597 F.2d 329, 336–37 (2nd Cir.1979)).

---

principal. *See State v. Ward*, 284 Md. 189, 201–02, 396 A.2d 1041, 1049 (1978). Granted, we limited procedural aspects of the doctrine of accessoryship. *See Jones v. State*, 302 Md. 153, 160–61 486 A.2d 184, 188 (1985)(holding that an accessory before the fact may be convicted of a greater crime than the principal and stating that "[m]erely because the evidence in the principal's trial may have been different, or the principal may have agreed to a favorable plea bargain arrangement, or the jury in the principal's trial may have arrived at a compromise verdict, is not a good reason for allowing the accessory to escape the consequences of having committed a particular offense"). We stated, however, that a complete abrogation of the common law doctrine of accessoryship would require action by the State Legislature. *See State v. Sowell*, 353 Md. 713, 726, 728 A.2d 712, 719 (1999). The Legislature recently abrogated the distinction between principals and accessories in Maryland Code (2001), § 4–204(b) of the Criminal Procedure Article.

**7.** The Supreme Court in *Powell*, upon considering whether an acquittal on the predicate felony (possession with intent to distribute cocaine) necessarily indicated that there was insufficient evidence to support the telephone facilitation conviction and mandated acquittal on that count as well, held that inconsistent verdicts with respect to a single defendant in a criminal trial are not reviewable as a matter of course. *See Powell*, 469 U.S. at 62–69, 105 S.Ct. at 475–79, 83 L.Ed.2d at 466–71.

A symmetry of results, while ideal, is not necessary to ensure the attainment of justice. Asymmetrical or inconsistent verdicts may be the result of the failure of the government to produce evidence at trial satisfying the jury of guilt beyond a reasonable doubt as to some of the named co-conspirators. *See Gardner,* 286 Md. at 527–28, 408 A.2d at 1321 (noting that the Supreme Court of Nebraska in *Platt v. State,* 143 Neb. 131, 8 N.W.2d 849, 855 (1943), provided the "most persuasive reasons for not applying the rule [of consistency] to separate trials," namely that "[t]he acquittal of the second conspirator could well result from the death or absence of an important state witness, the incompetency of a confession of the convicted conspirator in the second trial, the incompetency of a plea of guilty entered by the convicted conspirator at his trial, or *for any other reason that would amount to a failure of proof*")(emphasis added). Whether the evidence itself differs from one trial to another or whether two juries reasonably might have taken different views of the same evidence, an acquittal is not tantamount to a determination of innocence. *See United States v. Espinosa–Cerpa,* 630 F.2d at 332; *People v. Berkowitz,* 50 N.Y.2d 333, 428 N.Y.S.2d 927, 406 N.E.2d 783, 790 (1980).

■■ We digress, momentarily, to mention that the respondent raises a second argument in his brief before this Court, namely that the doctrine of non-mutual collateral estoppel prevents the State from prosecuting the respondent for conspiracy because the State failed to prove that a conspiracy existed at the prior trial. That argument, however, has not been raised previously, and thus, according to Maryland Rule 8–131(a), is not properly preserved for appellate review. Regardless, we have stated that the doctrine of non-mutual collateral estoppel is inappropriate in criminal cases, primarily because of the nonmutuality of the parties in the two cases. *See Carbaugh v. State,* 294 Md. 323, 329–330, 449 A.2d 1153, 1156–57 (1982)(holding that the disposition of State's case against one defendant will not collaterally estop relitigation of a common factual issue in a subsequent prosecution of a different defendant because of the nonmutuality of the parties

in the two cases). The State would otherwise be deprived of its opportunity to litigate whether a specific defendant violated the laws in question, thus undermining the government's important interest in the enforcement of its criminal laws. *See Gillis v. State,* 333 Md. 69, 79, 81 n. 5, 633 A.2d 888, 893, 894 n. 5 (1993) *cert. denied,* 511 U.S. 1039, 114 S.Ct. 1558, 128 L.Ed.2d 205 (1994)(citing *Standefer v. United States,* 447 U.S. at 25, 100 S.Ct. at 2007, 64 L.Ed.2d at 701; *Carbaugh v. State,* 294 Md. at 329–30, 449 A.2d at 1156–57). *See also, Welsh v. Gerber Products, Inc.,* 315 Md. 510, 518, 555 A.2d 486, 490 (1989)(referring to the Supreme Court's *Standefer* decision and noting that the doctrine of non-mutual collateral estoppel cannot be applied in criminal cases); *People v. Berkowitz,* 428 N.Y.S.2d 927, 406 N.E.2d at 789–90 (holding that a conspiracy defendant whose sole alleged co-conspirator had been previously acquitted of the conspiracy charge could not utilize the doctrine of collateral estoppel as a bar to his own prosecution because that there will often be significant disparities in the proof available against each of two separately tried defendants and a verdict of acquittal is not necessarily a determination of innocence).

For the foregoing reasons, and consistent with our previous decision in *Gardner,* we hold that the rule of consistency is inapplicable to verdicts issued in separate trials; thus, despite the acquittal of all of the respondent's co-conspirators in a prior trial, the respondent's conviction for conspiracy must stand. The Court of Special Appeals erred in reversing the respondent's conviction, and the decision on which it relies, *Rosenberg v. State,* 54 Md.App. 673, 460 A.2d 617 (1983), is incorrect with respect to its discussion of the rule of consistency.

***JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT.***