IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 38288

| | | |
|---|---|---|
| **JASON RYAN McDERMOTT,** | ) | **2012 Unpublished Opinion No. 479** |
| | ) | |
| Petitioner-Appellant, | ) | **Filed: May 17, 2012** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **STATE OF IDAHO,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| Respondent. | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Darla S. Williamson, District Judge.

Order summarily dismissing application for post-conviction relief, <u>affirmed</u>.

Jason Ryan McDermott, Boise, pro se appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

———————————————————

MELANSON, Judge

Jason Ryan McDermott appeals from the district court's order summarily dismissing his application for post-conviction relief. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

McDermott was found guilty by a jury of first degree murder and conspiracy to commit first degree murder, with a sentence enhancement for the use of a firearm in the commission of a felony. He was sentenced to concurrent fixed life terms for the murder and conspiracy charges, with an additional ten-year fixed term for the firearm enhancement. McDermott appealed his judgment of conviction and sentences, which this Court affirmed in an unpublished opinion. *State v. McDermott*, Docket No. 32071 (Ct. App. July 2, 2009). McDermott then filed a pro se application for post-conviction relief, asserting numerous claims for relief. The district court issued a notice of intent to dismiss the application and addressed each of McDermott's claims. The district court also appointed counsel to represent McDermott. Extensions of time were

granted to allow counsel to respond to the district court's notice of intent to dismiss. McDermott's counsel then filed an objection to the notice of intent to dismiss, arguing only that McDermott's claims were supported by affidavit. No additional factual information was provided. The district court entered an order summarily dismissing McDermott's application. McDermott appeals.

## II.

## ANALYSIS

Counsel was appointed to represent McDermott on appeal but was granted leave to withdraw prior to filing a brief. The district court denied McDermott's subsequent motion for appointment of counsel. McDermott, now pro se, asserts that his due process rights were violated when the district court dismissed his application and that his application raised genuine issues of material fact sufficient to warrant an evidentiary hearing.

### A.     Due Process

McDermott argues that his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 13 of the Idaho constitution were violated when the district court summarily dismissed his application for post-conviction relief. If a district court determines claims alleged in an application do not entitle an applicant to relief, the district court must provide notice of its intent to dismiss and allow the applicant twenty days to respond with additional facts to support his or her claims. I.C. § 19-4906(b); *Crabtree v. State,* 144 Idaho 489, 494, 163 P.3d 1201, 1206 (Ct. App. 2006). The district court's notice should provide sufficient information regarding the basis for its ruling so as to enable the applicant to supplement the application with the necessary additional facts, if they exist. *Newman v. State,* 140 Idaho 491, 493, 95 P.3d 642, 644 (Ct. App. 2004). A claim for post-conviction relief will be subject to summary dismissal if the applicant has not presented evidence making a prima facie case as to each essential element of the claims upon which the applicant bears the burden of proof. *DeRushé v. State,* 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009). Thus, summary dismissal is permissible when the applicant's evidence has raised no genuine issue of material fact that, if resolved in the applicant's favor, would entitle the applicant to the requested relief. If such a factual issue is presented, an evidentiary hearing must be conducted. *Goodwin v. State*, 138 Idaho 269, 272, 61 P.3d 626, 629 (Ct. App. 2002). Summary dismissal of an application for post-conviction relief may be appropriate, however, even where the state does

not controvert the applicant's evidence because the court is not required to accept either the applicant's mere conclusory allegations, unsupported by admissible evidence, or the applicant's conclusions of law. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994); *Baruth v. Gardner*, 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct. App. 1986).

The district court entered a notice of intent to dismiss McDermott's application for post-conviction relief on May 26, 2010. Subsequently, McDermott was appointed counsel. On July 13, a status conference was held during which McDermott requested, and was granted, an additional sixty days to respond to the district court's notice of intent to dismiss. On September 30, another status conference was held and McDermott was granted an additional thirty days to respond. Finally, on October 27, McDermott filed an objection to the district court's motion to dismiss without asserting additional facts to support his application. At a status conference on October 28, McDermott indicated to the district court that his claims were supported by his affidavit and that he had no additional information to add to his application and the matter was fully submitted for the court's consideration. On October 29, the district court entered an order dismissing McDermott's application for post-conviction relief.

McDermott was provided notice and was given much more than the twenty days required pursuant to I.C. § 19-4906(b) to respond to the notice with additional information and materials to support his claim. He declined that opportunity except to assert that his claims were supported by his affidavit. McDermott does not argue that he did not receive adequate notice of the district court's intent to dismiss nor does he assert that he was not granted sufficient time in which to respond to the district court's notice of intent to dismiss. He argues only that dismissal of his claims without an evidentiary hearing denied him due process. Procedural due process[1] requires that a person whose protected rights are being adjudicated is afforded notice and a meaningful opportunity to be heard in a timely and meaningful manner. *Smith v. State*, 146 Idaho 822, 829, 203 P.3d 1221, 1228 (2009). The scope of procedural due process in state post-conviction cases has been examined by the United States Supreme Court, in which it observed:

> A criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man. At trial, the defendant is presumed innocent and may demand that the government prove its case beyond a reasonable doubt. But "[o]nce a defendant has been afforded a fair trial and convicted of the offense for

---

[1]     McDermott does not raise a substantive due process claim.

3

which he was charged, the presumption of innocence disappears" (citation omitted). "Given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty."

The state accordingly has more flexibility in deciding what procedures are needed in the context of post-conviction relief. "[W]hen a state chooses to offer help to those seeking relief from convictions," due process does not "dictat[e] the exact form such assistance must assume."

*District Attorney's Office for the Third Judicial District v. Osborne*, 557 U.S. 52, ___, 129 S. Ct. 2308, 2320 (2009) (citations omitted). The Court concluded that the question that must be answered in such cases is whether the state's procedure for post-conviction relief offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental or transgresses any recognized principle of fundamental fairness in operation. *Id.* at ___, 129 S. Ct. 2320-21. We note, too, that due process is flexible and calls for such procedural protections as the situation demands. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). In light of this standard, we hold that the procedure for summary dismissal of claims under the Uniform Post-Conviction Procedure Act does not violate due process.

McDermott's due process claim is also based, in part, upon his assertion that newly discovered exculpatory evidence exists that he asserts could have been provided if his discovery requests had been granted. He correctly asserts that, in cases where exculpatory evidence is discovered after trial, an application for post-conviction relief is an appropriate means to challenge a conviction. I.C. § 19-4901(4). However, he has failed to identify or describe any newly discovered evidence. In asserting his claim of newly discovered evidence, McDermott refers to the following:

> 1. Evidence was not admitted at trial showing a "lack of gunshot residue and/or blood (DNA)" on his person or clothing.
> 2. Evidence was not admitted at trial to show the absence of his footprints at the scene of the crime.
> 3. Evidence was not admitted at trial to show that his fingerprints were not on the murder weapon or ammunition.

This is not newly discovered evidence and it appears that such evidence was, in fact, admitted. To the extent McDermott contends that other evidence (not identified in his brief) is newly discovered, that claim appears to be based upon speculation about what evidence he thinks discovery might have disclosed. In that vein, he argues that his discovery requests were not granted.

4

To the extent that McDermott asserts that his pretrial discovery requests were not granted, this assertion is belied by the record. In any event, the issue of pretrial discovery should have been raised on direct appeal. The scope of post-conviction relief is limited. *Rodgers v. State*, 129 Idaho 720, 725, 932 P.2d 348, 353 (1997). An application for post-conviction relief is not a substitute for an appeal. I.C. § 19-4901(b). A claim or issue which was or could have been raised on appeal may not be considered in post-conviction proceedings. *Whitehawk v. State*, 116 Idaho 831, 832-33, 780 P.2d 153, 154-55 (Ct. App. 1989). Thus, McDermott has shown no error regarding his claim that he was denied pretrial discovery.

To the extent that McDermott's newly discovered evidence claim is based upon a denial of a discovery request in his post-conviction case, there is no such request in the record and no reference to such a request in the register of actions. However, the district court, in the notice of intent to dismiss, addressed McDermott's apparent pro se request for discovery in the post-conviction case as follows: "McDermott filed a pro se request for discovery on May 24, 2010. McDermott is now represented by counsel. His counsel will determine what additional discovery is needed and can make appropriate motions." No discovery motion was thereafter made as far as can be determined from the record. Discovery is available in post-conviction relief cases only when specifically ordered by the court. Idaho Criminal Rule 57(b), which limits discovery in post-conviction cases, does not violate due process. *Aeschliman v. State,* 132 Idaho 397, 402, 973 P.2d 749, 754 (Ct. App. 1999). Discovery in post-conviction relief cases is committed to the discretion of the trial court. Unless necessary to protect an applicant's substantial rights, the district court is not required to order discovery. In order to be granted discovery, a post-conviction applicant must identify the specific subject matter where discovery is requested and why discovery as to those matters is necessary to his or her application. *State v. LePage,* 138 Idaho 803, 810, 69 P.3d 1064, 1073 (Ct. App. 2003). Because the request for discovery apparently filed by McDermott in his post-conviction case is not in the record on appeal, we are unable to determine whether it complied with I.C.R. 57(b) or the requirements of *LePage.* In any event, McDermott was given an opportunity to properly file a motion for discovery under I.C.R. 57(b) after counsel was appointed and no such motion was filed. It is the responsibility of the appellant to provide a sufficient record to substantiate his or her claims on appeal. *Powell v. Sellers*, 130 Idaho 122, 127, 937 P.2d 434, 439 (Ct. App. 1997). In the

absence of an adequate record on appeal to support the appellant's claims, we will not presume error. *Id.*

**B.      Summary Dismissal**

Separately from his due process argument, McDermott argues that the district court erred in summarily dismissing his application for post-conviction relief because the application presented evidence of material facts which would warrant an evidentiary hearing. Idaho Code Section 19-4906 authorizes summary dismissal of an application for post-conviction relief, either pursuant to motion of a party or upon the court's own initiative. Summary dismissal of an application pursuant to I.C. § 19-4906 is the procedural equivalent of summary judgment under I.R.C.P. 56. On review of a dismissal of a post-conviction relief application without an evidentiary hearing, we determine whether a genuine issue of fact exists based on the pleadings, depositions, and admissions together with any affidavits on file. *Rhoades v. State*, 148 Idaho 247, 249, 220 P.3d 1066, 1068 (2009); *Ricca v. State*, 124 Idaho 894, 896, 865 P.2d 985, 987 (Ct. App. 1993). In post-conviction actions, the district court, as the trier of fact, is not constrained to draw inferences in favor of the party opposing the motion for summary disposition; rather, the district court is free to arrive at the most probable inferences to be drawn from uncontroverted evidence. *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008).

McDermott raised numerous issues in his application for post-conviction relief. On appeal, aside from his due process argument, he only specifically addresses two claims relating to his traumatic brain injury and his conspiracy conviction. The following summarized claims (none of which were supported by newly discovered evidence and many of which were not supported by any admissible evidence at all) could have been raised on direct appeal:

> A. Under the heading "4th Amendment violation," McDermott alleged that evidence against him was seized pursuant to a search warrant that did not particularly describe the things to be seized.
> B. Under the heading "Denial of Compulsory Process for Attendance of Witnesses," McDermott alleged that his mother was not permitted to testify on his behalf and that law enforcement officers threatened other witnesses who could have been called to testify. He also asserted that he was denied access to a telephone book and so could not locate witnesses.
> C. Under the heading "5th Amendment Violations," McDermott claimed that he was coerced into making incriminating statements after he requested an attorney. He also claimed that the man who shot him in a previous incident was allowed to stay in the same part of the prison or jail where McDermott was

housed during the trial. He did not assert that there was any contact with this person or explain how housing McDermott in the same jail would affect his conviction. He also alleged that the prosecutor referred to McDermott's failure to take responsibility for the crime.

D. Under the heading "14th Amendment due process," McDermott asserted that the prosecutor made negative statements about him to the media, which he believes prejudiced his right to a fair trial because the jury must have been influenced by pretrial publicity.

E. Other General Claims:

1. During the trial, the prosecutor had a "secret meeting" with the victim's mother and a co-defendant's mother without inviting McDermott's mother.

2. At the preliminary hearing, someone (unidentified by McDermott) overheard a conversation between two witnesses during which they stated their intention to testify falsely.

3. McDermott could not have been the "mastermind" as portrayed by the state because of his brain injury.

4. During deliberations, a member of the jury inquired whether murder in the second degree was an option.

5. There were conflicting jury instructions.

6. At the county jail, McDermott was placed on suicide watch pending an order for a competency hearing, which was not held. (This claim apparently relates to McDermott's claim that he was not competent).

7. The state's expert claimed that the first shot (delivered by McDermott) would not have immediately resulted in the victim's death.

8. The jury's decision not to impose the death penalty in McDermott's case should not have affected a co-defendant's trial. This claim is based upon an allegation that after the jury declined the death penalty against McDermott the state withdrew its notice of intent to seek the death penalty against a co-defendant. McDermott does not explain how this affected his rights except that he apparently thinks the co-defendant should have been subject to the death penalty.

9. When one defendant is found guilty of conspiracy the co-defendant should also be found guilty. This claim is based upon an allegation that a co-defendant who was charged with conspiracy along with McDermott was found not guilty of conspiracy.

10. Statements made by McDermott to detectives were not recorded and should not have been admitted as evidence. (Statements made by McDermott to police following his arrest were suppressed and were not admitted at trial. McDermott asserts that the statements were admitted at the preliminary hearing. Evidence admitted at a preliminary hearing that is ultimately determined to be inadmissible is not ground for vacation of a conviction. *State v. Mitchell*, 104 Idaho 493, 500, 660 P.2d 1336, 1344 (1983).

11. The district court showed bias and prejudice when it allowed the false testimony of Danny Hosford. Hosford had previously made inconsistent statements to police officers.

12. The prosecutor misled the jury during its opening statement.

13. Detectives coerced a witness (Danny Hosford) into making false statements. His statements to police were not consistent.

14. The district court erred in allowing a witness (McGowen) to testify regarding McDermott's ability to put a gun to the victim's head and pull the trigger.

15. Reference to McDermott's criminal record during the guilt phase of the trial was unduly prejudicial.

16. Witness Cory McCuiston gave conflicting statements to police regarding McDermott's identity.

17. Witness Robert Key gave conflicting statements to police concerning the stolen gun.

18. Witness Renton McGowen gave conflicting statements to police concerning his role in events leading to the death of the victim.

19. Witness Renton McGowen gave false testimony at trial.

21. Witness Angela Turnboo falsely testified about threats made to the victim.

22. During a co-defendant's sentencing hearing, the state suggested that McDermott could not have committed the murder by himself. Therefore, the co-defendant's sentence should have been harsher than McDermott's.

23. The prosecutor misquoted a statement by McDermott regarding the death of the victim, which misled the jury. The prosecutor said that the only thing McDermott could bring himself to say about the murder is, "It's a shame that Zach is dead." McDermott claims he actually said the victim "did not deserve to die."

24. McDermott's motion for change of venue was denied.

25. There was extrajudicial prosecutorial and jury misconduct.

26. Witness Robert Key gave false testimony at trial.

27. The district court should have recognized that McDermott lacked capacity to understand the proceedings and ordered an evaluation pursuant to I.C. § 18-211.

McDermott alleged seventeen claims in his application for post-conviction relief that pertain to whether his sentences were excessive; whether the district court abused its discretion in imposing the sentences by failing to consider the proper factors, including mitigating factors, when arriving at its conclusion regarding what sentences to impose; and whether the district court showed bias or prejudice in imposing the sentences.[2] These claims (none of which are

---

[2] This Court affirmed McDermott's sentences and the manner in which they were imposed in an unpublished opinion. *State v. McDermott*, Docket No. 32071 (Ct. App. July 2, 2009).

supported by newly discovered evidence and many of which are not supported by any evidence at all) are summarized as follows:

1. The district court should have given greater weight to McDermott's traumatic brain injury at sentencing.

2. The district court ignored the jury's wish to impose a sentence other than death or life without parole.

3. The district court showed obvious bias by imposing a consecutive sentence for the firearm enhancement.

4. The district court showed obvious bias and prejudice by considering the lyrics to a song McDermott had written.

5. The district court showed prejudice at sentencing by denying McDermott's request to be placed in a mental facility.

6. The district court failed to take into consideration McDermott's need for mental treatment.

7. The district court was influenced by the outcome of a co-defendant's case in sentencing McDermott.

8. At sentencing, the district court stated that the jury would have been right in giving McDermott the death penalty.

9. At sentencing the prosecutor and the district court described McDermott as heinous and evil showing bias and prejudice.

10. McDermott told the presentence investigator that he had no gang affiliations but the investigator used information from a tainted source to claim McDermott's gang affiliation.

11. Information provided to the presentence investigator was not verified.

12. The prosecutor attacked McDermott's allocution at sentencing.

13. During the sentencing phase of the trial, the jury asked if they had to give a life sentence without parole, a death sentence or a lesser sentence.

14. The prosecutor misused the presentence report by only referring to certain parts.

15. The presentence report was prepared during the guilt phase of the trial.

16. Information in the presentence report was unlawfully obtained.

17. The sentence imposed for conspiracy exceeded sentencing "guidelines."

As to all of the above claims, we note that the scope of post-conviction relief is limited. *Rodgers*, 129 Idaho at 725, 932 P.2d at 353. An application for post-conviction relief is not a substitute for an appeal. I.C. § 19-4901(b). A claim or issue that was or could have been raised on appeal may not be considered in post-conviction proceedings. *Whitehawk*, 116 Idaho at 832-33, 780 P.2d at 154-55. Therefore, we will not consider these claims because they could have been raised on direct appeal. Even if we were to consider these claims, other than his claim that

his due process rights were violated McDermott made reference to only two of his claims in his appellate briefs. Specifically, he argued that the trial court ignored his claim of traumatic brain injury and that his conviction for conspiracy was illegal.

As to the traumatic brain injury claim, the district court correctly noted that evidence of McDermott's traumatic brain injury was admitted. Furthermore, to the extent that McDermott argues that his brain injury should have been given more consideration at sentencing, this issue was raised by McDermott on direct appeal and we decline to revisit it now. *See Parsons v. State,* 113 Idaho 421, 426, 745 P.2d 300, 305 (Ct. App. 1987). McDermott's claim regarding his conspiracy conviction appears to be based upon the fact that his co-conspirator, Robroy Wall, was acquitted of the conspiracy charge and that it would be inconsistent for the charge against McDermott to stand. No Idaho authority supports an argument that acquittal of one co-conspirator bars conviction of the other. However, many state and federal courts do bar conviction where there are only two defendants tried before the same jury for conspiracy and one is acquitted. *See Cortis v. Kenney*, 995 F.2d 838, 840 (8th Cir. 1993); *United States v. Sachs*, 801 F.2d 839, 845 (6th Cir. 1986); *United States v. Goodwin,* 492 F.2d 1141, 1144 (5th Cir. 1974); *State v. Johnson*, 788 A.2d 628, 635 (Md. 2002); *Bradley v. People*, 403 P.2d 876, 879 (Co. 1965); *Platt v. State*, 8 N.W.2d 849, 854 (Neb. 1943). We need not decide whether Idaho would follow this rule because, as the Ninth Circuit Court of Appeals has explained, when "only one conspirator is brought to trial or the conspirators are tried separately, the conviction of the other conspirator may stand." *United States v. Sangmeister*, 685 F.2d 1124, 1126-27 (9th Cir. 1982). Here, there were separate trials. McDermott's claim as to the conspiracy charge has no merit.

As to all of the remaining claims, McDermott has presented no argument or authority except for his general assertion that dismissal of his application was a denial of due process, which we have addressed above. A party waives an issue on appeal if either argument or authority is lacking. *Powell*, 130 Idaho at 128, 937 P.2d at 440.

## C.    Eighth Amendment Claims

McDermott claimed in his application for post-conviction relief that his rights under the Eighth Amendment were violated when he was placed into a group prison setting where he was exposed to loud noises and was not provided proper dental and medical care. Typically, claims relating to conditions of confinement are raised in habeas corpus petitions. However, this Court

has permitted Eighth Amendment cruel and unusual punishment claims relating to conditions of confinement to be asserted in post-conviction applications. *Whitehawk*, 116 Idaho at 832-33, 780 P.2d at 154-55. Here, however, McDermott's claims appear to relate to conditions of confinement before or during his trial. He also claimed, as an Eighth Amendment violation, that he was denied pretrial bail. We need not decide whether Eighth Amendment claims regarding conditions of confinement before or during trial or claims of excessive bail may be raised in a post-conviction application. McDermott has failed to even mention these claims in his appellate briefing. A party waives an issue on appeal if either argument or authority is lacking. *Powell*, 130 Idaho at 128, 937 P.2d at 440. We will not search the trial record for unspecified errors. *State v. Fee,* 124 Idaho 170, 174, 857 P.2d 649, 653 (1993).

### D. Ineffective Assistance of Trial and Appellate Counsel

A claim of ineffective assistance of counsel may properly be brought under the post-conviction procedure act. *Murray v. State*, 121 Idaho 918, 924-25, 828 P.2d 1323, 1329-30 (Ct. App. 1992). To prevail on an ineffective assistance of counsel claim, the defendant must show that the attorney's performance was deficient and that the defendant was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Hassett v. State*, 127 Idaho 313, 316, 900 P.2d 221, 224 (Ct. App. 1995). To establish a deficiency, the applicant has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988). To establish prejudice, the applicant must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Id.* at 761, 760 P.2d at 1177. This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Howard v. State*, 126 Idaho 231, 233, 880 P.2d 261, 263 (Ct. App. 1994).

In his application, McDermott asserted numerous claims of ineffective assistance of trial and appellate counsel. On appeal he has failed to mention those claims at all except for his general argument that dismissal of his application was a denial of due process and that material facts exist precluding summary dismissal. A party waives an issue on appeal if either argument or authority is lacking. *Powell*, 130 Idaho at 122, 937 P.2d at 440. We will not search the trial

11

record for unspecified errors. *Fee,* 124 Idaho at 174, 857 P.2d at 653. We do not address McDermott's claims of ineffective assistance of trial counsel.

## III.

## CONCLUSION

McDermott's procedural due process rights were not violated by dismissal of his application for post-conviction relief. Only two of McDermott's claims were supported by argument or authority and those claims have no merit. Therefore, we affirm the order of the district court summarily dismissing McDermott's application for post-conviction relief. No costs or attorney fees are awarded on appeal.

Chief Judge GRATTON and Judge GUTIERREZ, **CONCUR.**